**D.C. WHEELER and John Thedford Sims, Plaintiffs-Appellants,**

v.

**COSDEN OIL AND CHEMICAL CO., et al., Defendants-Appellees.**

No. 82–1711.

United States Court of Appeals, Fifth Circuit.

June 18, 1984.

Rehearing and Rehearing En Banc Denied Oct. 25, 1984.

John H. Green, Odessa, Tex., for plaintiffs-appellants.

Maxwell, Godwin & Carlton, Donald E. Godwin, J. Richard Tubb, Dallas, Tex., for Cosden, American, Tate, Weeks, Thomas and Long.

Joe Mattox, Atty. Gen., Sharon Gillespie, Asst. Atty. Gen., Philip Durst, Austin, Tex., for Farr.

Before GEE, RANDALL, and JOHNSON, Circuit Judges.

GEE, Circuit Judge:

On this appeal from a Rule 12 dismissal, we are asked to determine whether the district court erred in holding that plaintiffs fail to state a claim actionable under 42 U.S.C. § 1983 and in dismissing their pendent state claims. This case requires us to reconsider, in light of recent Supreme Court decisions, our earlier holding in *Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972), that an action lies under § 1983 for malicious prosecution without probable cause in a state proceeding. We conclude that *Shaw* remains valid. We conclude as well that plaintiffs have stated a cause of action for arrest and imprisonment without probable cause, one of a type that this Court has repeatedly held cognizable under § 1983 as a deprivation of rights guaranteed by the Fourth Amendment. *See, e.g., Reeves v. City of Jackson*, 608 F.2d 644 (5th Cir.1979). Since we reverse and hold that plaintiffs do state a federal cause of action, we remand to the district court to reconsider whether the pendent state claims should be joined in these federal proceedings.[1]

*Background*

In mid-1980, plaintiffs D.C. Wheeler and John Thedford Sims contracted with Cosden Oil and Chemical Company (Cosden) and American Petrofina, Inc. (Fina) to sell oil to Cosden and Fina from the W.B. Currie lease in Howard County, Texas. Pursuant to state regulation, Wheeler had previously obtained from the Texas Railroad Commission authorization to produce 76 barrels of oil per day from the lease.

In late October, Archie Farr, an agent of the Railroad Commission, began an investigation of Wheeler and Sims' oil production activities. According to plaintiffs' allegations, Farr met with Texas Ranger Thomas Almond to request his help in conducting the investigation and ultimately in bringing criminal charges against Wheeler and Sims. Farr told Almond that the Currie lease was incapable of producing the quantity of oil reported by plaintiffs and that he concluded plaintiffs were either falsifying records or bringing in stolen oil, thereby defrauding Cosden and Fina.

Acting under the statutory authority to inspect oil lease property and related records granted to the Railroad Commission under Texas law,[2] Farr entered the Currie lease several times without a search warrant—but, according to plaintiffs, failed to discover any incriminating evidence. Farr and agents of Cosden and Fina then installed a drop meter on the pipeline at a point outside the Currie lease in order to measure the amount of oil coming off plaintiff's property. The pipeline itself is owned by Cosden. Plaintiffs allege that before installing the drop meter they tampered with it so as to cause it to register less oil flowing through the pipe than was actually being carried.

Based allegedly on information collected from the meter and other allegedly false information provided by Farr and the corporate defendants, Almond obtained an arrest warrant for Sims on a felony theft charge. Sims was taken into custody on January 5, 1981, and was released later that day after posting bond. In late March, Wheeler and Sims were indicted by a Howard County grand jury for felony attempted theft.[3] Wheeler was arrested on a writ of capias on April 10, 1981; he posted bond and was released later that day. Wheeler and Sims were tried and acquitted.

Wheeler and Sims then brought suit against Cosden, Fina, Farr, and individual agents of Cosden and Fina who allegedly participated in the investigation that led to their arrest and prosecution. Under the

---

1. *See Hamman v. Southwestern Gas Pipeline, Inc.*, 721 F.2d 140, 144 (5th Cir.1983).

2. See Tex.Rev.Stat.Nat.Res.Code Ann. §§ 88.091, 88.092, 88.093 (Vernon 1978).

3. Presumably attempted theft of oil, although this is not explicitly stated in the record.

umbrella of section 1983, they allege unreasonable search and seizure as well as general claims of due process and equal protection violations.[4] They also brought a pendent state claim for malicious prosecution. The district court dismissed the various § 1983 claims for failure to state a cause of action and dismissed the pendent state claim without prejudice. Plaintiffs appeal.

### The Section 1983 Claims: Search and Seizure, Malicious Prosecution, False Arrest and Imprisonment

■ In reviewing the district court's dismissal on a Rule 12 motion of plaintiffs' various claims under § 1983, we apply the generous standard of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957): it must appear beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *See, e.g., Jones v. United States*, 729 F.2d 326 at 327, 330 (5th Cir. 1984).

Since liability under § 1983 is predicated on the deprivation of rights secured by the Constitution or federal law, we must first determine whether any of the defendants' alleged acts deprived the plaintiffs of federally guaranteed rights. We construe the complaint to assert § 1983 claims for unreasonable search and seizure, prosecution without probable cause, and arrest and imprisonment without probable cause. We review the potential merits of each of these claims in turn.

### Search and Seizure Claims

■ Plaintiffs' allegations of unreasonable search and seizure are based on the warrantless searches of the oil lease property and on the installation of the drop meter. As for the searches, we agree with

the district court that plaintiffs' application for authorization to produce oil from the lease charged them with constructive notice of the Texas statutes under whose authority Farr entered the lease,[5] and constituted implicit agreement to abide by the statutory provisions, including consent to such entry and search as is alleged.[6] By conceding, at oral argument, that the authorization statutes are constitutional, plaintiffs have effectively abandoned any argument that these searches violated their Fourth Amendment rights. We conclude that the district court properly dismissed the plaintiffs' allegations regarding the warrantless searches of their property for failure to state a constitutional deprivation.

Plaintiffs' allegations that the installation of the meter by Farr[7] and agents of the corporate defendants violate their Fourth Amendment rights is similarly lacking in merit. Even if the search itself was illegal, plaintiffs lack standing to challenge it since they have not asserted any property rights in the pipeline, the oil flowing through it, or the land on which the meter was located. *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (illegal search of third party's property does not alone confer on person aggrieved standing to challenge search as violation of Fourth Amendment rights).[8]

### Malicious Prosecution

■ Plaintiffs contend that Farr's alleged malicious misrepresentations to Almond give rise to a cause of action under § 1983 for malicious prosecution. As far as we can determine, this Circuit has not considered and ruled on this question since the panel decision in *Shaw v. Garrison*, 467 F.2d 113 (5th Cir.), *cert. denied*, 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972),

---

**4.** The plaintiffs' complaint also alleged a Sixth Amendment violation which they never seriously pursued in the district court. The district court did not address this claim, and the plaintiffs have abandoned it on appeal.

**5.** See *supra* at 256 and note 2.

**6.** Plaintiffs alleged that Farr "caused others to enter" the property, as well as entering himself;

however, their allegation admits that both Farr and such "others" entered the property under the statutory authority of the Railroad Commission.

**7.** Defendants contest Farr's role in the installation of the meter.

**8.** We note that Cosden, the apparent owner of the pipeline and the oil, consented to the search.

which enjoined a state prosecution for perjury on the ground that it was brought "in bad faith"—i.e. without probable cause. The opinion in *Shaw* approaches the question by asking whether such a prosecution itself satisfied the requirement of "irreparable injury" to enjoin state proceedings set out in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and concludes that since such a prosecution violated "a federal right to be free from bad faith prosecutions," it did satisfy *Younger. Shaw*, 467 F.2d at 119–121.

Thus the law of the Circuit; the question we face today is whether the holding in *Shaw* survived the Supreme Court's intervening decision in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).[9] We conclude that it did.

Our inquiry whether the Fourteenth Amendment requires the states to make a determination of probable cause to prosecute begins at the long-established doctrine that the grand jury clause of the Fifth Amendment does not apply to the states. *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1883). *Hurtado* itself, however, holds simply that the grand jury institution is not essential to the due process secured by the Fourteenth Amendment, 110 U.S. at 520, 4 S.Ct. at 113, and is silent on the issue whether the process used by the state in deciding whether to prosecute must incorporate a neutral determination of probable cause or, indeed, any determination at all. From the manner in

which the Court framed the issue in *Hurtado* and from references in that opinion to the preservation of "the right of personal liberty," it can be argued that *Hurtado* rests on an assumption that any procedure adopted by the states to replace the grand jury would perform an equivalent function—to protect persons accused from being "harassed or destroyed by prosecutions founded only upon private malice or popular fury," *Hurtado* 110 U.S. at 521, 4 S.Ct. at 113 [10]—and that, therefore, prosecution without probable cause would violate Fourteenth Amendment due process rights. As we have noted, an earlier panel of this Circuit has held squarely that "there is a federal right to be free from bad faith prosecutions." *Shaw v. Garrison*, 467 F.2d 113 (5th Cir.1972).

Can the argument that the Fourteenth Amendment due process clause incorporates a right to a determination of probable cause to prosecute in state proceedings survive the Supreme Court's later decision in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)? *Gerstein*, a case considering state prosecutorial procedure, holds no more than that the Fourth Amendment requires of the states a judicial or neutral determination of probable cause to arrest as a prerequisite for extended restraint of liberty following arrest, 420 U.S. at 114, 95 S.Ct. at 863, and specifically that a prosecutor's decision to prosecute is not a constitutionally sufficient determination of probable cause.[11] Under

---

**9.** We have previously determined that there is no action "under color of state law" and hence no § 1983 claim where a purely private party alone instigates a state court action with malicious intent, *Beker Phosphate Corp. v. Muirhead*, 581 F.2d 1187 (5th Cir.1978); *see Cate v. Oldham*, 707 F.2d 1176, 1178 n. 9 (11th Cir.1983) (same, following *Beker*); *Lindley v. Amoco*, 639 F.2d 671 (10th Cir.1981) (same, following *Beker*); *see also Norton v. Liddel*, 620 F.2d 1375, 1380–81 (10th Cir.1980) (private individual conspiring with state officer may be acting under color of state law if sufficient nexus exists); *see id.* at 1381, n. 4 (expressly reserving question whether such malicious prosecution states constitutional deprivation).

**10.** "The grand jury's historic functions survive to this day. Its responsibilities continue to in-

clude both the determination whether there is probable cause to believe a crime has been committed and the protection of citizens against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974), *citing Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659–60, 33 L.Ed.2d 626 (1972).

**11.** 420 U.S. at 112–13, 116–17, 95 S.Ct. at 864–65. This portion of the *Gerstein* holding obviously proceeds from the fact that the Fourth Amendment's requirement of probable cause to arrest has been incorporated into the Fourteenth Amendment due process clause and is thus applicable to the states, *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

*Gerstein,* a constitutionally sufficient neutral determination of probable cause to arrest may be made in any of three ways: by the issuance of a warrant, *see* 420 U.S. at 113, 95 S.Ct. at 862, by a post-arrest hearing before a magistrate, *see id.* at 119, 95 S.Ct. at 865, or by an indictment "fair on its face" and returned "before a properly constituted grand jury," *id.* at 117, n. 19, 95 S.Ct. at 865, n. 19.

However, the *Gerstein* court went on to indicate that this Fourth Amendment protection is attendant on arrest and detention alone and does not bear on the decision to prosecute: "In holding that the prosecutor's assessment of probable cause is not sufficient alone to justify restraint of liberty pending trial, we do not imply that the accused is entitled to judicial oversight or review of the decision to prosecute. Instead, we adhere to the Court's prior holding that a judicial hearing is not a prerequisite to prosecution by information." 420 U.S. at 118–19, 95 S.Ct. at 865–66 (citations omitted). And again: "Because *the probable cause determination* is not a constitutional prerequisite to the charging decision, it is required only for those suspects who suffer restraints on liberty other than the condition that they appear for trial." *Id.* at 125, n. 26, 95 S.Ct. at 869, n. 26.

But what sort of "probable cause determination" is it that the Court here declares not requisite to the prosecutor's decision to charge? There are two possibilities and two only:

(1) that the Court means to say that *no* such determination by anyone is constitutionally required, the prosecutor's discre-

tion being as absolute to charge one he has no reason to suspect as it is to decline to charge one he knows is guilty;

(2) that the Court intends, by its reference to "the probable cause determination," to indicate the sort of neutral or judicial determination that it has, in earlier passages of its *Gerstein* opinion, discussed at length and concluded is required before extended detention of a defendant, but not merely to charge him.

With no great assurance, we conclude that the Court's quoted language should bear the second meaning stated above or, at any rate, that the Court has not made it sufficiently clear that the other meaning is intended to require us to abandon our holding in *Shaw.* We do so based upon several disparate considerations.

The first is parallel language to be found in the Fourth Amendment, that "no Warrants shall issue, but upon probable cause, ...." Whether or not this passage applies directly here, it clearly contemplates that before any person is seized by the State *someone* must first have determined that there was probable cause to believe he had broken the law. The second is one of policy: it is difficult for us to conceive a notion more repugnant to settled ideas of due process than one that the state prosecutor need have no basis whatever for criminal charges—even trivial ones—but may without constitutional disapproval subject whomever he wishes to whimsical prosecution.[12] Finally, there is the matter of the Court's language in *Gerstein.*[13]

A survey of this lends support to the notion that the Court assumes the prosecu-

---

**12.** We do not treat here of his immunity from a § 1983 action even should he bring such a groundless charge; that is not in question since *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Nor do we deal with prosecutorial discretion, except in the limited sense of how it should properly be exercised. The question whether a duty exists in the prosecutor to proceed only on his conscientious determination that probable cause exists to charge is analytically distinct from that of whether he may be called to account for failing to observe that duty.

**13.** Here, as often happens, we are driven to construing the language of the Court, not that of the Constitution. Yet where the Court perceives in the Constitution that which is not apparent to us, we have no other recourse. No line of strict analytical reasoning suggests itself by which we could either embrace or refute the notion that a determination of probable cause by *someone* —at the very least by the prosecutor—is required by the Constitution's words. They do not say, and the choice is a rarified one indeed, one of pure policy and one, as we have observed in text, that we must make on the slimmest of records, that of a Rule 12 dismissal.

tor has a duty to determine probable cause before charging. At 420 U.S. 113–14, 95 S.Ct. at 862–63, for example, the Court instances the parallel "policeman's assessment of probable cause" as "provid[ing] legal justification for arresting a person suspected of crime, ...." It should be strange indeed if a policeman in action lay under the duty to make such an assessment before arresting a person, while a prosecutor lay under no corresponding one to do so before charging him. More specifically of the prosecutor's duty, the Court writes:

> Under the Florida procedures challenged here, a person arrested without a warrant and charged by information may be jailed or subjected to other restraints pending trial without any opportunity for a probable cause determination. Petitioner defends this practice on the ground that the prosecutor's decision to file an information is itself a determination of probable cause that furnishes sufficient reason to detain a defendant pending trial. Although a conscientious decision that the evidence warrants prosecution affords a measure of protection against unfounded detention, we do not think prosecutorial judgment standing alone meets the requirements of the Fourth Amendment.

420 U.S. at 116–17, 95 S.Ct. at 864–65. To be sure, the Court assesses the prosecutor's "conscientious decision" as wanting sufficient force to alone support sustained detention of a defendant. Clearly the Court assumes, however, that such a decision will have been made by the prosecutor in the normal case, presumably in the discharge of a duty to do so. We conclude that such a duty exists. If we are correct that one does, moreover, we find it difficult

to believe that a safeguard so fundamental to criminal due process—one against capricious prosecutions—is not incorporated by the Fourteenth Amendment.

If, then, the Fourteenth Amendment imposes a duty on state prosecutors to charge only upon ascertaining probable cause, it follows that one acting under color of state authority, as Farr was alleged to have been, can be liable for subverting the performance of that duty, as by maliciously tendering false information to the prosecutor which leads him to believe probable cause exists where there is none. Since this would violate federally guaranteed rights, it therefore can be grounds for a § 1983 action.[14]

### False Arrest and Imprisonment

In addition to stating a claim for malicious prosecution actionable under § 1983, we conclude that the allegations in plaintiffs' complaint state a claim for arrest and imprisonment without probable cause in violation of plaintiff's Fourth Amendment rights. We have repeatedly recognized such claims as actionable under § 1983, see, e.g., Reeves v. City of Jackson, 608 F.2d 644 (5th Cir.1979) (§ 1983 claims for false arrest and false imprisonment stated where, without probable cause, officers arrested and detained stroke victim in belief he was intoxicated). We read the complaint here to state a claim that both Wheeler and Sims were deprived of their right to a determination of probable cause before arrest or detention in that the information which formed the basis of their arrest and detention was supplied by the state (Farr) with the knowledge that it was false. We hold that this states a claim for false arrest and imprisonment.

---

**14.** Our sister circuits are divided on this issue. The Second and Fourth Circuits have implicitly recognized such a cause of action in decisions holding that termination of the allegedly wrongful state proceedings in favor of the federal plaintiff is as essential to such a claim under § 1983 as it would be at common law. *Singleton v. City of New York*, 632 F.2d 185 (2d Cir. 1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Morrison v. Jones*, 551

F.2d 939 (4th Cir.1977); *Tucker v. Duncan*, 499 F.2d 963 (4th Cir.1974).

The First, Sixth, Ninth and Tenth Circuits conclude that a claim of prosecution without probable cause may not be brought under § 1983. *See Cloutier v. Town of Epping*, 714 F.2d 1184, 1190 (1st Cir.1983); *Dunn v. Tennessee*, 697 F.2d 121 (6th Cir.1982); *Bretz v. Kelman*, 722 F.2d 503 (9th Cir.1983); *Martin v. King*, 417 F.2d 458 (10th Cir.1969).

■ In view of the nature of plaintiffs' claim—that their arrest and detention were based on information which the state knew to be false—their false arrest and imprisonment claims are not affected by the fact that they received the formal procedures to which they are entitled under *Gerstein.*[15] Under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a defendant may challenge a Fourth Amendment probable cause determination on the ground that it was based on information which the state knew or should have known to be false and that such information was necessary to the finding of probable cause. Although *Franks* dealt with a search warrant, the holding has been extended to apply to arrest warrants, *see, e.g., Garris v. Rowland,* 678 F.2d 1264 (5th Cir.1982).

Moreover, since, as *Gerstein* makes clear, a state grand jury indictment is to be considered as exactly equivalent to a magistrate's determination of probable cause prior to the issuance of a warrant, *see Gerstein,* 420 U.S. at 117, n. 19, 95 S.Ct. at 865, n. 19, *Franks* necessarily applies where the determination of probable cause is made by a state grand jury as well as where that determination is made by a magistrate. Thus, we find that both Sims and Wheeler may bring a § 1983 claim of false arrest and imprisonment on the ground that the finding of probable cause made as to each of them was based on information known to be false.

■ We further conclude that Farr may not assert that he is entitled to absolute immunity from such a claim by virtue of *Briscoe v. Lahue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). *Briscoe* holds that § 1983 does not abrogate for state officers the absolute immunity from civil liability based on testimony at trial afforded all witnesses by the common law. As the Court emphasized, *Briscoe's* holding is limited to its base in the common law; the opinion expressly leaves open the issue of immunity for testimony at a probable cause hearing. 103 S.Ct. at 1112, n. 5. As Justice Marshall noted, "The absence of any immunity in such cases at common law should alone undermine any claim to absolute immunity under § 1983. In addition, the policy considerations applicable to a testimony at a probable cause hearing differ substantially from those relevant to a testimony at a probable trial. For instance, the absence of cross-examination at probable cause hearings increases the risk that false testimony will go undetected." 103 S.Ct. at 1124, n. 10 (Marshall, J. dissenting).

*Briscoe* does not create immunity where none existed before; it merely rejects the notion that § 1983 abolishes for police officers that testimonial immunity which exists at common law. We hold that *Briscoe* does not afford immunity from suit for knowingly false testimony submitted at probable cause determinations.[16]

■ Finally, plaintiffs object to the district court's dismissal of their pendent state claim for malicious prosecution. The decision to exercise pendent jurisdiction is committed to the discretion of the trial judge, *United Mine Workers v. Gibbs,* 383 U.S. 715, 716, 726, 86 S.Ct. 1130, 1134,

---

15. As noted above, *Gerstein* provides that the Fourth Amendment requirement of a determination of probable cause may be satisfied by the issuance of an arrest warrant, a hearing before a magistrate shortly after being detained, or a grand jury indictment. Sims was arrested pursuant to a warrant and presumably received a bond hearing; Wheeler was arrested pursuant to a grand jury indictment and a writ of capias and similarly may be presumed to have received a bond hearing.

16. We note that two circuits have extended *Briscoe* to create immunity for state officers' testimony at grand jury proceedings. *See Kincaid v.*

*Eberle,* 712 F.2d 1023 (7th Cir.) (per curiam), *cert. denied,* — U.S. ——, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983); *Briggs v. Goodwin,* 712 F.2d 1444 (D.C.Cir.1983) (per curiam). We are not persuaded by these opinions; they are cursory in the extreme, *see Kincaid,* 712 F.2d at 1024 (Cudahy, J. concurring) (impropriety of deciding issue on the basis of 9-page pro se brief and without oral argument), and in our view they inadvisedly extend *Briscoe* beyond the intrinsic limitations of its basis in the common law.

Of course, *Briscoe* would ban any claim here based on false testimony at trial.

1139, 16 L.Ed.2d 218 (1966). Here, the district court dismissed the pendent state claims solely because it had dismissed all federal claims asserted at the outset of the action. Since our reinstatement of federal claims removes the principal reason relied on by the district court for its dismissal of the pendent claims, we vacate the court's dismissal of these claims in order to enable the district court to exercise its discretion in view of the new factors now presented. *See Hamman,* 721 F.2d at 144.

VACATED, in part, REVERSED, in part, and REMANDED.