Martha S. STRENGTH, Plaintiff,

v.

W.L. HUBERT, et al., Defendants.

William L. STRENGTH, Jr., Plaintiff,

v.

W.L. HUBERT, et al., Defendants.

Civ. A. Nos. 86–D–825–N, 86–D–826–N.

United States District Court,
M.D. Alabama, N.D.

May 22, 1987.

Griffin Sikes, Jr., Montgomery, Ala. and J. Myron Smith, Prattville, Ala. for plaintiff Martha S. Strength.

Griffin Sikes, Jr., Montgomery, Ala., for plaintiff William L. Strength, Jr.

Ronald G. Davenport, Montgomery, Ala. for defendant Hubert.

Algert S. Agricola, Jr., and Richard N. Meadows, State Asst. Attys. Gen., Montgomery, Ala., for defendant Carroll.

## MEMORANDUM OPINION

DUBINA, District Judge.

These consolidated actions are now before the Court on separate motions for summary judgment filed herein by the defendants on March 16, 1987. Pursuant to these motions, each defendant contends that he is entitled to a summary judgment against the plaintiffs inasmuch as there exists no genuine issue as to any material fact, and the defendants are entitled to a judgment as a matter of law. *See* Rule 56(c), *Federal Rules of Civil Procedure.* The record herein demonstrates that each of said motions is supported by the pleadings on record, discovery requests and responses thereto, various affidavits and depositions, exhibits and memorandum briefs.

On April 15, 1987, the plaintiffs filed herein their response in opposition to the defendants' motions for summary judgment. The plaintiffs' response is likewise supported by the pleadings on record, discovery requests and responses thereto, various affidavits and depositions, exhibits and a memorandum brief. Pursuant to their response, the plaintiffs contend that the defendants' motions for summary judg-

ment are due to be denied since there exist herein one or more genuine issues of material fact and neither defendant is entitled to a judgment as a matter of law.

Having fully and carefully considered all of the above, this Court is of the opinion that for reasons expressed below, the defendants' motions for summary judgment are due to be GRANTED on grounds that (1) defendant Carroll is entitled to absolute immunity from suit under 42 U.S.C. § 1983 for allegedly giving false or perjurious testimony before a state grand jury which resulted in the indictment of the plaintiffs for the crime of forgery; (2) the plaintiffs' § 1983 claims against defendant Hubert fail to state a claim upon which relief may be granted; and (3) this Court lacks subject matter jurisdiction over the plaintiffs' pendent state law claims.

This Court has subject matter jurisdiction over plaintiffs' § 1983 claims pursuant to 28 U.S.C. §§ 1331 and 1343.

## I. FACTS

These are cases in which the plaintiffs allege various violations of 42 U.S.C. § 1983.[1] Additionally, the plaintiffs allege various state law claims against the defendants for the torts of malicious prosecution, abuse of process and outrage.[2] In essence, the plaintiffs contend that the defendants, acting under color of state law, unlawfully conspired to cause the state court criminal indictment and prosecution of the plaintiffs for the crime of forgery, a felony under the laws of the State of Alabama. The plaintiffs contend that by so acting the defendants deprived or caused the plaintiffs to be deprived of certain rights, privileges and immunities secured to them by the Fourth, Sixth[3] and Four-

---

1. *See* plaintiffs' First, Second, Third and Fourth claims for relief.

2. *See* plaintiffs' Fifth, Sixth, Seventh and Eighth claims for relief.

3. This Court is unable to determine what Sixth Amendment right the plaintiffs claim to have been deprived of at the hands of the defendants. In fact, except for the mere conclusory averments of a Sixth Amendment violation, the

plaintiffs have totally failed to raise and/or support such a claim. Accordingly, any alleged Sixth Amendment claims against the defendants herein are due to be dismissed on grounds that the same fail to state claims upon which relief may be granted. *See* Rule 12(b)(6), *F.R.Civ.P.* Alternatively, as will be seen *infra,* any alleged Sixth Amendment claims must also fail as a matter of law for those reasons given *infra*

teenth Amendments to the Constitution of the United States; namely, the Fourth Amendment's guarantee (as incorporated through the Fourteenth Amendment) that warrants shall not be issued except upon probable cause and the Fourteenth Amendment's guarantee of substantive due process.[4]

Having fully considered all of the evidence offered in support of and in opposition to the defendants' motions for summary judgment, the Court finds the following facts:[5] In or around July of 1982, plaintiff William Strength and defendant Hubert incorporated a trucking business known as Autauga Transport, Inc. (hereinafter referred to as ATI). The plaintiffs were both full-time employees of the corporation, with plaintiff Martha Strength being responsible for the day-to-day bookkeeping of the corporation. Though the corporation was initially successful, operating losses caused the dissolution of the corporation in or around January of 1983.

In August of 1984 defendant Hubert contacted defendant Carroll, an investigator with the Office of the Attorney General for the State of Alabama, and asked defendant Carroll to come to Prattville, Alabama, and meet with him and one Samuel Moore, a former truck driver for ATI. At this meeting, defendant Hubert presented defendant Carroll with numerous cancelled checks drawn on the account of ATI at the Bank of Prattville. These checks, which had been made payable to former ATI truck drivers, including Mr. Moore, bore endorsements of the respective payees as well as William or Martha Strength. The evidence is undisputed that on each cancelled check the endorsement in the name of the payee was not made by the payee but instead made by either William or Martha Strength without the express permission and/or consent of the payee. At this same meeting

defendant Hubert also provided defendant Carroll with various corporate receipt books which allegedly reflected numerous discrepancies among the amounts of the checks, the amounts of the receipts, and the dates of each.

After this meeting defendant Carroll undertook an investigation of the matter. Though it is unclear whether the investigation was carried out under the authority of the Office of the Attorney General, the Office of the Autauga County District Attorney, or both, it is undisputed that to some extent an official investigation took place regarding the alleged forgeries by the plaintiffs.

Finally, in January 1985, defendant Carroll presented the results of his investigation to the Honorable Glen Curlee, the District Attorney for Autauga County, Alabama. Later that month, defendant Carroll gave testimony concerning the matter before the Autauga County Grand Jury. Defendant Carroll was the sole witness testifying before said grand jury. During the 1985 Spring Term of the Autauga County Grand Jury, multi-count indictments were rendered against the plaintiffs charging them with the crime of forgery. In March of 1986, however, District Attorney Janice Williams, Mr. Curlee's successor, moved that the indictments against the plaintiffs be dismissed. In a sworn affidavit submitted by Ms. Williams and attached to the plaintiffs' response in opposition to the defendants' motions for summary judgment, she stated as follows:

> When I reviewed these records ..., I was "floored." After reviewing these records it was apparent that the endorsements were not criminally made. To the extent the records were produced, they completely exonerated the [plaintiffs].

requiring dismissal of plaintiffs' Fourth and Fourteenth Amendment claims.

4. *See* Plaintiffs' Memorandum Brief in Opposition to Motions for Summary Judgment, pages 14–17.

5. Given the basis for the Court's rulings upon the defendants' motions for summary judgment, the Court declines to make detailed findings of

material and undisputed facts. Indeed, findings of fact herein almost appear unnecessary since this Court is of the opinion that for reasons expressed *infra,* plaintiffs have no § 1983 claim against either defendant. Accordingly, the Court merely sets forth a brief statement of those undisputed facts which are necessary for an understanding of the Court's opinion.

None of the records produced indicated any criminal activity, but completely accounted for the money to which they related. I felt at the time and still feel that our office had been used and that we had been duped into indicting the [plaintiffs].[6]

The criminal cases against the plaintiffs were subsequently *nol prossed* on motion of the Autauga County District Attorney.

## II. DEFENDANTS' CONTENTIONS

The defendants raise numerous and separate grounds in support of their motions for summary judgment. Among these grounds, defendant Carroll contends that the plaintiffs' § 1983 claims against him are due to be dismissed on the ground that he is entitled to absolute immunity from § 1983 liability. To support this contention, defendant Carroll cites to this Court the case of *Briscoe v. Lahue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), in which the United States Supreme Court held that a police officer who presented perjured testimony at the plaintiffs' trial was entitled to absolute immunity from damage liability under § 1983. Defendant Carroll argues here that though the *Briscoe* Court specifically reserved the question of whether the defendant/police officer was entitled to absolute immunity for allegedly false testimony given at two probable cause hearings, *Id.*, 460 U.S. at 328, n. 5, 103 S.Ct. at 1112 n. 5, the legal analysis and reasoning behind the *Briscoe* holding are equally applicable to cases in which a § 1983 defendant has allegedly damaged the plaintiff by giving false or malicious testimony at a grand jury proceeding. To further support this contention, defendant Carroll relies upon certain appellate deci-

sions from the Second, Seventh and D.C. circuits which have seemingly extended the *Briscoe* rule to cases in which a governmental witness has given false testimony to a grand jury. *See Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.), *cert. denied*, 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983); *Briggs v. Goodwin*, 712 F.2d 1444 (D.C.Cir.), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1983); and *San Filippo v. U.S. Trust Co. of New York*, 737 F.2d 246 (2d Cir.1984), *cert. denied*, 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). *See also Collins v. Walden*, 613 F.Supp. 1306 (N.D.Ga.1985), *aff'd*, 784 F.2d 402 (11th Cir.1986), in which the Court extended the *Briscoe* rule to testimony or statements given by affidavit or depositions. Accordingly, defendant Carroll submits that, upon the basis of these authorities, the plaintiffs' § 1983 claims against him are due to be dismissed as a matter of law.[7]

Concerning those grounds raised by defendant Hubert in support of his motion for summary judgment, defendant Hubert contends, *inter alia*, that in the event defendant Carroll is afforded absolute immunity from any § 1983 liability herein, then plaintiffs' § 1983 claims against defendant Hubert are due to be dismissed on grounds that the same fail to state claims upon which relief may be granted. *See* Rule 12(b)(6), *Federal Rules of Civil Procedure*. More specifically, defendant Hubert contends that if defendant Carroll is dismissed as a party defendant to this cause, then the plaintiffs have no § 1983 claims against defendant Hubert since there would be no state action involved in the alleged § 1983 conspiracy.[8]

---

6. *See* page 2 of the affidavit of the Honorable Janice Williams, District Attorney for Autauga County, Alabama.

7. As noted above, defendant Carroll raises numerous other grounds in support of his motion for summary judgment. However, since the Court agrees with defendant Carroll on the issue of absolute immunity, the Court declines to express an opinion on any of the remaining grounds proffered by defendant Carroll.

8. The Court recognizes that though defendant Hubert's motion for summary judgment does

not expressly raise this issue, counsel for defendant Hubert did argue the issue at a hearing held before this Court on April 22, 1987. Accordingly, the Court considers defendant Hubert's motion for summary judgment to be amended to the extent that the same includes such a Rule 12(b)(6) ground for dismissal. As to those remaining grounds proffered by defendant Hubert in support of his motion for summary judgment, the Court declines to express an opinion thereon since the Court agrees *infra* with defendant Hubert's Rule 12(b)(6) claim.

### III. PLAINTIFFS' CONTENTIONS

The plaintiffs offer four major arguments in opposition to defendant Carroll's claim to absolute immunity. First, and most obvious, the plaintiffs argue that the immunity created by *Briscoe* does not embrace the allegedly perjurious grand jury testimony of defendant Carroll. Indeed, as noted above, the *Briscoe* Court specifically reserved the question of whether such immunity should be granted to witnesses who testify at probable cause hearings. *See Briscoe v. Lahue*, 460 U.S. at 328, n. 5, 103 S.Ct. at 1112 n. 5. The plaintiffs contend, however, that if this Court deems it necessary to address this issue, the Court should follow the decisions of the First, Fifth and Tenth Circuit Courts of Appeals in finding that the *Briscoe* rule should not be extended so as to afford a § 1983 defendant absolute immunity for false or perjurious testimony given at grand jury proceedings. *See Anthony v. Baker*, 767 F.2d 657 (10th Cir.1985); *Krohn v. United States*, 742 F.2d 24 (1st Cir.1984); and *Wheeler v. Cosden Oil & Chemical Co.*, 734 F.2d 254 (5th Cir.) *reh'g denied, opinion amended*, 744 F.2d 1134 (5th Cir.1984).

The plaintiffs next contend that even if *Briscoe* included grand jury testimony, the rule is inapplicable to § 1983 claims based upon more than mere false or perjurious testimony. Instead, the plaintiffs contend that when the alleged false or perjurious testimony is but *one* act in furtherance of an unlawful conspiracy to deprive a person of his or her constitutional rights, the absolute immunity rule set forth in *Briscoe* is not applicable, regardless of the forum at which the subject testimony was given.

The plaintiffs further contend that inasmuch as *Briscoe* is expressly limited to immunity for testimony given in judicial proceedings, the rationale underlying the *Briscoe* rule—to encourage witnesses to come forward with all they know—does not justify extending that immunity to cover extra-judicial conspiracies to give false testimony, regardless of the forum at which the subject testimony was given. Instead, the plaintiffs contend that since their § 1983 claims are not based solely upon defendant Carroll's testimony, but on the alleged underlying conspiracy between defendants Carroll and Hubert to present false testimony and to withhold exculpatory evidence in the course of criminal proceedings, the *Briscoe* analysis is inapplicable.

Finally, this Court understands the plaintiffs to contend that in determining whether to extend the *Briscoe* rule to grand jury testimony, this Court should consider and apply certain policy concerns identified by the Supreme Court in *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985).

Therein, the Court stated the following with regard to the doctrine of absolute immunity:

"[O]ur cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant." *Briscoe v. Lahue*, 460 U.S. at 342 [103 S.Ct. at 1119]. Absolute immunity flows not from rank or title or "location with the government," *Butz v. Economou*, 438 U.S. at 511 [98 S.Ct. at 2913], but from the nature of the responsibilities of the individual official. And in *Butz*, the court mentioned the following factors, among others, as characteristic of the judicial process and to be considered in determining absolute as contrasted with qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctibility of error on appeal. 438 U.S. at 512, [98 S.Ct. at 2914].

*Cleavinger*, 106 S.Ct. at 501. The plaintiffs submit that when these factors are applied to the facts of the instant cases, policy dictates against affording defendant Carroll absolute immunity.

### IV. ISSUE

Before the central issue in these cases can be properly examined, the Court deems

it necessary to give brief consideration to the preliminary issue of whether the plaintiffs' claim that the defendants did knowingly and intentionally conspire to cause the malicious prosecution of the plaintiffs for the crime of forgery is cognizable under § 1983.[9] In other words, before it can be determined whether defendant Carroll is entitled to absolute immunity from plaintiffs' § 1983 claims, it must first be determined whether the plaintiffs indeed have such claims as a matter of law.

The question of whether a malicious prosecution claim is cognizable under § 1983 is, at best, unsettled among the federal circuit courts of appeals. Indeed, case law demonstrates that while some courts have seemingly held that persons may be liable under § 1983 when they conspire to procure groundless state indictments and charges based upon false or perjurious testimony,[10] other courts have refused to recognize such claims under § 1983 on grounds that they constitute nothing more than alleged violations of duties of care arising out of tort law.[11] The Court does note with particularity, however, the former Fifth Circuit's case of *Shaw v. Garrison,* 467 F.2d 113 (5th Cir.), *cert. denied,* 409 U.S. 1024, 93 S.Ct. 467, 34 L.Ed.2d 317 (1972), in which the Court specifically held that "there is a federal right to be free from bad faith prosecutions." *Id.* at 120. Moreover, the Court notes the recent decision of the new Fifth Circuit in reaffirming *Shaw.* In *Wheeler v. Cosden Oil & Chemical Company, supra,* the Court stated as follows:

> ... The Fourteenth Amendment imposes a duty on state prosecutors to charge only upon ascertaining probable cause, ... [and] one acting under color of state authority ..., can be liable for subverting the performance of that duty, as by maliciously tendering false information to the prosecutor which leads them to believe that probable cause exists where there is none. Since this would violate

**9.** In considering this preliminary issue, reference must be made to the precise nature of the plaintiffs' § 1983 claims herein. In general, the plaintiffs' claim that this alleged conspiracy

> "... was entered into and/or continued despite each defendant's knowledge that the plaintiff[s] had not committed the criminal offense of forgery, nor any similar offense; but with knowledge that by selectively manipulating and presenting certain documents and withholding others from the District Attorney of Autauga County, it could be made to appear that the criminal offense of forgery had been committed."

*See* plaintiffs' First Claims for Relief, paragraph 2. More specifically, the plaintiffs claim that in furtherance of this alleged unlawful conspiracy, the defendants committed the following acts, *inter alia:* (a) reviewed and selectively extracted documents from the books and records of ATI; (b) met with and supplied false, misleading and incomplete information and documents to the District Attorney of Autauga County, Alabama; (c) withheld, secreted, destroyed and/or knowingly failed to disclose the existence and significance of documents which exonerated the plaintiffs of the commission of the crime of forgery; (d) requested and/or encouraged the wrongful indictment of the plaintiffs; (e) testified falsely, misleadingly, and incompletely and withheld exonerating documents and evidence from the Spring 1985 term of the Autauga County Grand Jury, all with the intent to cause the wrongful and malicious indictment and prosecution of the plaintiffs; and (f) aided, abetted, encouraged, instigated and sought the actions of each other with knowledge of the lack of probable cause to believe that the plaintiffs had committed the crime of forgery or any other similar offense. *See* plaintiffs' First, Second and Third claims for relief. The plaintiffs further claim that each of these acts, as well as others, was committed by the defendants either jointly and/or severally with defendant Carroll representing himself to be a law enforcement officer for the Attorney General of the State of Alabama and using his position and office to gather and obtain information and/or documents. Based upon these claims, it is clear that the gravamen of the plaintiffs' complaints, as amended, is a claim of a conspiracy maliciously to prosecute the plaintiffs.

**10.** *See, e.g., Wheeler v. Cosden Oil & Chemical Company,* 734 F.2d 254 (5th Cir.), *reh'g denied, opinion amended,* 744 F.2d 1134 (5th Cir.1984); *Anthony v. Baker,* 767 F.2d 657 (10th Cir.1985); *Bretz v. Kelman,* 773 F.2d 1026 (9th Cir.1985); *Losch v. Borough of Parkesburg,* 736 F.2d 903 (3d Cir.1984); and *Briggs v. Malley,* 748 F.2d 715 (1st Cir.1984).

**11.** *See e.g., Graves v. Wayne County,* 577 F.Supp. 1008, 1011 (E.D.Mich.1984), *citing Baker v. McCollan,* 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("[S]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter-type injury must be sought in state court under traditional tort-law principles.")

federally guaranteed rights, it therefore can be grounds for a § 1983 action.

*Id.* at 256.

Since the Eleventh Circuit Court of Appeals has apparently not addressed this issue, the plaintiffs herein contend that *Shaw* is binding upon this Court under the authority of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981). This Court declines, however, expressly to accept the holding in *Shaw* as controlling authority herein since, as noted by the new Fifth Circuit in *Wheeler* at 258, questions exist as to whether the holding in *Shaw* survived the Supreme Court's intervening decision in *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). In *Gerstein*, the Supreme Court held that the Fourth Amendment requires of the states a judicial or neutral determination of probable cause to arrest as a prerequisite for extended restraint of liberty following arrest, and specifically that a prosecutor's decision to prosecute is not a constitutionally sufficient determination of probable cause. *See Gerstein*, 420 U.S. at 112–14, 116–17, 95 S.Ct. at 863–65. Though the new Fifth Circuit held in *Wheeler* that *Shaw* did survive the Supreme Court's ruling in *Gerstein*, it does not appear that the Eleventh Circuit Court of Appeals has so decided. Accordingly, this Court declines to consider whether *Shaw* or other such cases properly recognize a § 1983 cause of action for malicious prosecution. Instead, given the basis for this Court's granting of the instant motions for summary judgment, this Court is of the opinion that such a conclusion of law is unnecessary since, regardless of what that conclusion might be, the defendants herein are entitled to a judgment as a matter of law.

Having now considered the preliminary issue of whether the plaintiffs' claims are cognizable under § 1983, this Court will turn its attention to the central issue presented by defendant Carroll's claim of absolute immunity; i.e., whether defendant Carroll is entitled to absolute immunity from § 1983 liability for allegedly giving false and malicious testimony to the grand jury which indicted the plaintiffs for the crime of forgery. For reasons expressed below, this Court is of the opinion, and so finds, that defendant Carroll is entitled to such immunity and, therefore, the plaintiffs' § 1983 claims against him are due to be dismissed as a matter of law.

## V. DISCUSSION

### A. *Defendant Carroll's Motion for Summary Judgment.*

As noted above, *Briscoe* holds that a police officer or any other government witness testifying at trial in his official capacity has absolute immunity from § 1983 claims based upon the substance of his trial testimony. Moreover, such absolute immunity applies even though the testimony might have been knowingly false and malicious. *Briscoe*, 460 U.S. at 326–329, 103 S.Ct. at 1110–1112. As further noted, however, *Briscoe* expressly leaves upon the question of whether such a witness is entitled to absolute immunity from § 1983 liability based upon allegedly false grand jury testimony. *Id.* at 329, n. 5, 103 S.Ct. at 1112 n. 5. Accordingly, *Briscoe's* unanswered question has, as one might guess, resulted in a split of opinion among the various circuits which have considered the issue. Since the Eleventh Circuit Court of Appeals has not directly addressed the issue, this Court will attempt to do so by first analyzing the reasoning behind the *Briscoe* rule.

*Briscoe* involved a civil suit for damages under § 1983 against a police officer who allegedly gave perjured testimony that led to the plaintiff's criminal conviction. The case presented the issue of whether the common-law absolute immunity afforded to lay witnesses from civil suits based upon their testimony applies to police and other government witnesses testifying in their official capacity. After noting that such absolute immunity has been extended to judges, *see Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), prosecutors, *see Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), court clerks, *see Scott v. Dixon*, 720 F.2d 1542 (11th Cir.1983), *cert. denied*, 469 U.S. 832, 105 S.Ct. 122, 83 L.Ed.2d 64 (1984),

and jurors, *see Sunn v. Dean, 597 F.Supp. 79 (N.D.Ga.1984),* the Court stated the following with regard to witnesses:

... In damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *Calkins v. Sumner,* 13 Wis. 193, 197 (1860). A witness's apprehension of damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify.... And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.... Even within the constraints of the witness' oath there may be various ways to give an account or to state an opinion. These alternatives may be more or less detailed and may differ in emphasis and certainty. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective evidence.... But the truth-finding process is better served if the witness' testimony is submitted to "the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies."

*Briscoe,* 460 U.S. at 333–34, 103 S.Ct. at 1114–15 (some citations omitted). After weighing these concerns, the Court in *Briscoe* concluded that since the immunity analysis rests upon functional categories and not upon the defendant's status, *see Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), a police officer appearing at trial as a witness may reasonably be viewed as acting like any other witness sworn to tell the truth. In such event, the Court concluded that the police officer/witness can make a strong claim to the absolute immunity afforded lay witnesses at common law from damages liability for their testimony in judicial proceedings. *See Briscoe,* 460 U.S. 336, 342, 103

S.Ct. 1116, 1119. Moreover, the Court concluded that other considerations of public policy support absolute immunity for such witnesses. As stated by the Court, "[s]ubjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Briscoe,* 460 U.S. at 343, 103 S.Ct. at 1119. Accordingly, the Court held that the public interest in protecting the judicial process—which had justified affording judges, prosecutors and lay witnesses the protection of absolute immunity—also justified granting that protection to police officers when they take the witness stand at trial and testify in their official capacity.

■■■ Given this reasoning behind the *Briscoe* rule, this Court fails to understand why the same would not be applicable to § 1983 claims based upon alleged false or perjurious grand jury testimony. Indeed, this Court is of the opinion that the fact that *Briscoe* involved testimony at a trial whereas the instant cases involve testimony at a grand jury proceeding is not a distinction that allows a different result. As noted by the D.C. Circuit Court of Appeals:

*Briscoe* emphasized the concern that the absence of immunity would interfere with the ability of "judicial proceedings" "to determine where the truth lies." *That concern applies not only to trials, but to any judicial proceeding where the testimony of witnesses might be affected by the lack of immunity.*

*Briggs v. Goodwin,* 712 F.2d 1444, 1448–49 (D.C.Cir.1983) (emphasis added) (citations omitted). Furthermore, as noted by the Seventh Circuit Court of Appeals:

The position at common law, on which the [*Briscoe*] court laid heavy emphasis, ... was the same: the witness before a grand jury had absolute immunity. *See Lake v. King,* 1 Wms.Saund. 131, 132, 85 Eng.Rep. 137, 139 (K.B.1679); *The King v. Skinner,* 1 Lofft 55, 56, 98 Eng.Rep. 529, 530 (K.B.1772); *Kidder v. Parkhurst,* 3 Allen 393, 396 (Mass.1862);

*Schultz v. Strauss,* 127 Wis. 325, 328, 106 N.W. 1066, 1067 (1906). Turning from history to policy, we think it apparent that the concern that the Supreme Court expressed with regard to the impact of liability on witnesses at trial, ... is every bit as forcefully presented by the prospect of imposing liability on witnesses before the grand jury. A police officer ... who faces the prospect of a § 1983 suit every time he testifies in a grand jury proceeding will be distracted from and impeded in the performance of his official duties. If anything, the argument for absolute immunity is stronger in the grand jury setting than in the trial setting, because false testimony before the grand jury is less harmful than false testimony at trial; the grand jury can indict, but cannot convict.

*Kincaid, supra,* at 1023–24 (some citations omitted). Suffice it to say here that this Court agrees in full with the reasoning and analysis of the above-cited cases. This Court is of the opinion that to hold otherwise would severely frustrate the primary function of the grand jury, that being, to investigate and determine probable cause. Only with such immunity can it be reasonably expected that police officers and other government witnesses will testify without fear of reprisal. Accordingly, this Court holds that although the Supreme Court in *Briscoe* left the question open, it must follow that grand jury witnesses are entitled to absolute immunity from § 1983 liability based upon the substance of their testimony.[12] Furthermore, the Court holds that this immunity applies even though the subject testimony might have been knowingly false and malicious.

■ Moreover, this Court finds no merit in the plaintiffs' contentions that even if the *Briscoe* rule is applicable to claims of false and malicious grand jury testimony, the rule cannot be applied in cases in which the plaintiffs allege either (1) a conspiracy to present false testimony and to withhold exculpatory evidence or (2) other acts which, in combination with the false testimony, constitute an underlying extra-judicial conspiracy to deprive the plaintiffs of their constitutional rights. Although the plaintiffs have cited to this Court certain cases from the Second and Seventh Circuits which have apparently adopted such a "modified-extension" of the *Briscoe* rule,[13] this Court is of the opinion that such cases fail to recognize one of the essential elements which must be proven by a plaintiff to recover under § 1983; i.e., a deprivation of a federal or constitutional right. For instance, in *San Filippo,* the Court stated in pertinent part as follows:

> Thus, had plaintiff sued defendants on the basis of allegedly false grand jury testimony, [the defendants' motion for summary judgment on grounds of absolute immunity would have been due to be granted under Briscoe].
>
> However, plaintiff has based his § 1983 claim not on defendants' testimony, but on their alleged conspiracy with the D.A.'s office to present false testimony and to withhold exculpatory evidence in the course of criminal proceedings. As [the district judge] noted in rejecting defendants' immunity defense to that charge, no court has yet held that absolute immunity from prosecution for false testimony extends to conspiracy with public officials to present false testimony.

*San Filippo,* 737 F.2d at 254. And in *Knudsen,* the Court stated in pertinent part as follows:

---

**12.** By so holding, this Court expressly disagrees with and declines to follow those opinions from the First, Fifth and Tenth Circuits which have declined to extend *Briscoe* to knowingly false or prejurious testimony given at grand jury proceedings. *See supra,* p. 882. This Court is unpersuaded by these opinions inasmuch as, in this Court's view, they fail to recognize the primary purpose of the absolute witness immunity rule; i.e., "... to insure that the judicial process function unimpeded by fear on the part of its

participants that they will be sued for damages for their part in the proceeding." *Collins v. Walden,* 613 F.Supp. 1306, 1314 (N.D.Ga.1985), *affirmed,* 784 F.2d 402 (11th Cir.1986).

**13.** *See San Filippo v. U.S. Trust Company of New York, Inc.,* 737 F.2d 246 (2d Cir.1984); and *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir. 1984). *See also Knudsen v. D.C.B., Inc.,* 592 F.Supp. 1232 (N.D.Ill.1984).

[The defendant] correctly argues that under *Briscoe v. Lahue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), a police officer is immune from suit for perjured testimony. However, [the defendant] misconstrues plaintiff's complaint. Plaintiff does not allege that [the defendant's] testimony was the act which violated plaintiff's rights; rather, it is merely alleged that such testimony was an act in furtherance of an underlying conspiracy between the defendants to harass plaintiff and otherwise deny his constitutional rights. Insofar as plaintiff does not seek to recover solely based on [the defendant's] alleged perjury, [the defendant's] motion to strike must be denied.

*Knudsen,* 592 F.Supp. at 1235. Thus, though these courts impliedly agree that the *Briscoe* rule should be extended to grand jury testimony, they decline to extend the rule to cases in which the plaintiffs allege either a conspiracy to present false testimony, or that the testimonial act was but one act in furtherance of an underlying conspiracy to deprive the plaintiffs of their constitutional rights. This Court is of the opinion, however, that to so hold completely ignores the requirement under § 1983 of a deprivation of a federal or constitutional right. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 930, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982); and *Burch v. Apalachee Community Mental Health Services, Inc.,* 804 F.2d 1549 (11th Cir.), *reh'g granted, opinion vacated,* 812 F.2d 1339 (11th Cir.1987). In other words, the question which begs itself is, that even if one were to assume that a conspiracy existed among the defendants herein, and the purpose of that conspiracy was to present false testimony to and withhold exculpatory evidence from a grand jury investigating the plaintiffs, and the conspiracy consisted of those numerous pre-testimony conspiratorial acts identified by the plaintiffs *see,* n. 5, *supra,* of what federal or constitutional right have the plaintiffs been deprived if the alleged conspiracy lacks the *one* act (i.e., defendant Carroll's testimony before the grand jury) which resulted in the grand jury's indicting the plaintiffs? [14] In this Court's opinion, no federal or constitutional right arises under such circumstances.

Further, in holding that the plaintiffs' allegations of a conspiracy do not preclude the extension or application of the *Briscoe* rule to testimony given before a grand jury, this Court finds as instructive Judge Forrester's opinion in *Collins v. Walden,* 613 F.Supp. 1306 (N.D.Ga.1985), *affirmed* 784 F.2d 402 (11th Cir.1986). After holding that the reasoning behind the Briscoe rule is equally applicable to other forms of testimony such as depositions and affidavits, Judge Forrester stated as follows:

... It appears to the court that the policies which support immunity for witnesses also support immunity for other participants in the judicial process. The truth-seeking function of the court demands evidence. Yet evidence does not present itself to the court. It must be located, organized, and understood by the attorneys before it can be presented to the court. This process of discovering, organizing, and understanding evidence is a vital part of the judicial process. It is perhaps more essential to the court's truth-seeking function than the actual trial for without it there would be no grist for the mill. The search for evidence often requires interviews with persons who may not actually testify at trial but who are nonetheless important to the process because they might know of someone else whose testimony would be helpful. The possibility that they may be forced to defend a lawsuit for damages can only discourage such people from becoming involved. The court's need for evidence demands that *all* participants in the process of gathering evi-

---

**14.** The Court notes here that when posed with this specific question at a hearing held in this matter on April 22, 1987, plaintiffs' counsel failed to identify what, if any, federal or constitutional rights the plaintiffs could claim deprivation of. Though plaintiffs' counsel did allude to some of those allegations set forth herein at n. 5, *supra,* this Court fails to understand how such acts—short of the alleged false and perjurious testimony itself—can result in a constitutional deprivation.

dence for use at trial be immune from any liability for damages for their part, however small, in that process.

*Id.* at 1315 (emphasis in original). Accordingly, this Court finds no merit in the plaintiffs' contention that, even if the *Briscoe* rule is applicable to grand jury testimony, the rule is not controlling in cases in which the plaintiffs allege a conspiracy to present false and malicious testimony, with the presentment of the testimony itself being but one act in furtherance of the alleged conspiracy.

Finally, this Court cannot accept the plaintiffs' contention that, in determining the issue at hand, this Court should consider and apply those policy concerns set forth by the Supreme Court in *Cleavinger.* To begin with, the issue in *Cleavinger* was as follows:

> Whether members of a federal prison's Institution Discipline Committee who hear cases in which inmates are charged with rules infractions are entitled to absolute, as distinguished from qualified, immunity from personal damages liability for actions violative of the United States Constitution.

*Id.* 474 U.S. at ——, 106 S.Ct. at 497, 88 L.Ed.2d at 509. Accordingly, the issue in *Cleavinger* was whether the members of the discipline committee were entitled to either absolute *or* qualified immunity. Herein, the issue is not whether defendant Carroll is entitled to absolute or qualified immunity for his alleged false and malicious testimony before the grand jury. Indeed, it cannot be reasonably argued that defendant Carroll is entitled to qualified immunity for such an act since the doctrine of qualified immunity requires that one not deprive another of clearly established constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). As noted above, *see* pages 884–885, *supra,* it remains to be clearly established whether the plaintiffs indeed have a constitutional right to be free from a malicious prosecution.

■ This Court is further of the opinion that even if those factors identified by the Court in *Cleavinger* are properly considered herein, policy dictates in favor of affording defendant Carroll absolute immunity. For instance, as noted above, there exists a strong need to assure that government witnesses who testify in their official capacity can perform their functions without harassment, intimidation or the fear of being forced to defend a subsequent lawsuit. The fact that the grand jury can only indict, as opposed to convict, is a built-in safeguard that reduces the need for private damages actions as a means of controlling unconstitutional conduct. The system lends itself to correctibility since, if a witness's testimony is knowingly false and malicious, the witness can be found guilty of perjury and face criminal penalties. Thus, though such a witness may be free to testify without fear of a civil action for damages in federal district court, such a witness is not free to falsify his testimony without penalty.

Accordingly, based upon the foregoing reasoning, this Court is of the opinion that the plaintiffs' § 1983 claims against defendant Carroll must fail as a matter of law on the ground that said defendant is entitled to absolute immunity. Furthermore, the plaintiffs' pendent state law claims against defendant Carroll must likewise fail as a matter of law since this Court has no independent subject matter jurisdiction over the same.[15]

### B. *Defendant Hubert's Motion for Summary Judgment.*

■ Given this Court's holding which dismisses defendant Carroll from these causes, the plaintiffs' § 1983 claims against defendant Hubert may be academically dismissed on grounds that the same fail to state claims upon which relief may be granted. Indeed, it is well established that a prerequisite for any relief under § 1983 is that the defendant acted under color of

---

**15.** *See, generally, United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966); *Craft v. Florida*

*Federal Sav. & Loan Ass'n,* 786 F.2d 1546 (11th Cir.1986); and *Shahawy v. Harrison,* 778 F.2d 636 (11th Cir.1985).

state law. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Scott v. Dixon, supra;* and *Motes v. Myers*, 810 F.2d 1055 (11th Cir. 1987). Furthermore, it is equally well established that though a private citizen is not generally subject to § 1983 liability, a private citizen who jointly engages with state officials in prohibited action may be regarded as acting under color of state law for purposes of § 1983 liability. *See United States v. Price*, 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966); and *Taylor v. Gibson*, 529 F.2d 709, 715 (5th Cir.1976). Suffice it to say here that given this Court's ruling dismissing defendant Carroll from these causes, the plaintiffs have no independent § 1983 claims against defendant Hubert since, standing alone, defendant Hubert cannot be said to have deprived the plaintiffs of any constitutional right under color of state law.

Accordingly, this Court is of the opinion that defendant Hubert's motion for summary judgment is due to be granted as a matter of law since plaintiffs' § 1983 claims against said defendant fail to state claims upon which relief may be granted. Likewise, said defendant's motion for summary judgment is due to be granted as to plaintiffs' state pendent law claims since this Court has no independent subject matter jurisdiction over the same.[16]

## VI. CONCLUSION

In conclusion, this Court wishes to point out that, despite upholding defendant Carroll's claim to absolute immunity, such immunity does not necessarily prevent the plaintiffs from seeking to recover upon claims which may have substantial merit. Indeed, such immunity merely precludes the plaintiffs from asserting a § 1983 cause of action based upon the theory that these defendants conspired to cause the false and malicious prosecution of the plaintiffs for the crime of forgery. In essence, what this Court is saying is that whatever claims the plaintiffs may have must be litigated in state court.

**16.** *See* n. 15, *supra.*

Accordingly, upon the basis of all of the foregoing, this Court is of the opinion that the defendants' motions for summary judgment are due to be GRANTED and these causes DISMISSED with prejudice.

A separate order will be entered in accordance with this Memorandum Opinion.