John BRIGGS, et al., Appellants,

v.

Guy GOODWIN, et al.

No. 80–2269.

United States Court of Appeals, District of Columbia Circuit.

July 8, 1983.

Before GINSBURG, Circuit Judge, and BAZELON and MacKINNON, Senior Circuit Judges.

ORDER

v.

Guy GOODWIN, et al.

No. 80–2269.

United States Court of Appeals, District of Columbia Circuit.

July 8, 1983.

Robert Boehm, Washington, D.C., Morton Stavis, Hoboken, N.J., Cameron Cunningham, East Palo Alto, Cal., Brady Coleman, Austin, Tex., Jack Levine, and Philip J. Hirschkop, Alexandria, Va., were on the Supplemental Memorandum for appellants.

Robert F. Muse and Jacob A. Stein, Washington, D.C., were on the Petition for Rehearing and Supplemental Memorandum for appellees.

Before GINSBURG, Circuit Judge, and BAZELON and MacKINNON, Senior Circuit Judges.

Opinion for the Court filed by Senior Circuit Judge BAZELON.

Opinion concurring in the judgment filed by Senior Circuit Judge MacKINNON.

BAZELON, Senior Circuit Judge:

The allegations in this case raise troubling issues of law: Appellant Briggs alleges that appellee Goodwin, a United States Attorney, knowingly gave false sworn testimony before a district court, which resulted in a violation of appellant's constitutional rights. Appellee asserts entitlement to absolute immunity from civil liability arising from his testimony. This court rejected that claim. Thereafter the Supreme Court decided *Briggs v. LaHue*[1] and we granted rehearing to reconsider the issue in light of that decision. Upon such reconsideration, we are compelled to the conclusion that *Briscoe* entitles appellee to absolute immunity as a witness.

I

The factual background and procedural history in this case have been fully detailed in our earlier opinions, *Briggs v. Goodwin*, 698 F.2d 486 (D.C.Cir.1983) ("*Briggs II*"); *Briggs v. Goodwin*, 569 F.2d 10 (D.C.Cir. 1977), *cert. denied*, 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978) ("*Briggs I*"); only a brief review is required here.

The case arises out of a grand jury proceeding in which several grand jury witnesses, including appellant Briggs, were represented by the same counsel.[2] In response to rumors that some of the grand jury witnesses were government informants, the witnesses filed a motion in district court to compel the government to disclose whether any government informants were among the witnesses represented by group counsel. At the hearing on the motion, appellee Goodwin, who was the prosecutor in charge of the grand jury investigation, took the stand and was asked under oath whether any of the witnesses represented by group counsel were government informants. Goodwin answered, "No." Appellant Briggs alleges that Goodwin's response was false, that Goodwin knew it to be false, and that the allegedly false statement caused Briggs to share defense strategy with an informant, who passed it back into the hands of the government.

1. —— U.S. ——, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

2. For a more detailed account, see *Briggs I*, 569 F.2d 10, 13–14 (D.C.Cir.1977).

Briggs sued Goodwin, *inter alia,* for damages arising out of violation of Briggs's sixth amendment rights. Goodwin asserted absolute immunity on two grounds: 1) as a prosecutor, and 2) as a witness. The district court refused to dismiss the case on either ground, but agreed to certify the question of prosecutorial immunity for interlocutory appeal.

In a 2–1 decision, this court rejected Goodwin's prosecutorial immunity claim. *Briggs I,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978). Applying the "functional" test outlined in *Imbler v. Pachtman,*[3] the court found that at the time of the statement Goodwin was operating in his investigatory role.[4] In that capacity, he was not entitled to the absolute immunity conferred on prosecutors acting as advocates, but only to the qualified immunity provided for police and other government officials acting as investigators.[5]

For a variety of reasons,[6] *Briggs I* also reached the question of witness immunity, despite the district court's refusal to certify the issue for interlocutory appeal[7] and the failure of the parties to brief it.[8] On this issue, the *Briggs I* panel held that Goodwin's statement was not the testimonial act of a witness in the traditional sense, and

that the protection of absolute witness immunity should not apply.[9] The majority went on at some length to explain that even if Goodwin had been a witness, common law witness immunity might not protect government officials whose perjured testimony infringed constitutional rights.[10] The case was remanded for the district court to determine Goodwin's entitlement to a qualified immunity based upon good faith.

On remand, the district court granted summary judgment for Goodwin.[11] In the instant appeal, we reversed on the ground that factual issues remain in dispute. *Briggs II,* 698 F.2d 486 (D.C.Cir.1983). Thereafter, the Supreme Court decided *Briscoe;* we thereupon ordered supplemental briefing and granted rehearing to reconsider the issue of witness immunity.

*Briscoe v. LaHue.*

*Briscoe* involved a civil suit for damages under 42 U.S.C. § 1983 against a police officer who allegedly gave perjured testimony that led to the plaintiff's criminal conviction. All parties to the suit agreed that the common law affords lay witnesses absolute immunity from civil suits based on their testimony.[12] The case presented the issue of whether the same immunity applies to police and other government witnesses testifying in their official capacity.[13]

---

**3.** 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**4.** *Briggs I,* 569 F.2d at 16–25.

**5.** *See Gray v. Bell,* 712 F.2d 490 (D.C.Cir.1983). *Gray* reiterated the distinction between the advocatory and investigatory roles of the prosecutor. It found that the prosecutor in that case, in preparing for and presenting evidence to the grand jury, was functioning in his advocatory role and was therefore entitled to absolute immunity. Our action in this case, upholding absolute immunity for the prosecutor's conduct *as a witness, does not affect the standards* set out in *Gray.*

**6.** Two members of the *Briggs I* panel (Judges Robinson and Wilkey) concluded that the witness immunity issue was properly before them under the "collateral order" exception to the final judgment rule of 28 U.S.C. § 1291 (1976). 569 F.2d at 58. The third member of the panel, Judge McGowan, dissented on this point. *Id.* at 26 n. 14.

**7.** *See* 569 F.2d at 15, 58.

**8.** *Id.* at 26.

**9.** *Id.* at 26–27.

**10.** *Id.* at 27–29.

**11.** *Briggs v. Goodwin,* No. 74–803, slip op. at 4 (D.D.C. Sept. 19, 1980).

**12.** —— U.S. at ——, 103 S.Ct. at 1115.

**13.** Because *Briscoe* was a suit brought under 42 U.S.C. § 1983, much of the Supreme Court's opinion and of Justice Marshall's dissent concerns whether section 1983 created an exception to the general witness immunity provided by common law. *Id.* —— U.S. at ——, 103 S.Ct. at 1112–1119; *id.* —— U.S. at ——, 103 S.Ct. at 1120–1131 (Marshall, J., dissenting). That analysis is not directly applicable here, as this case involves a suit brought directly under the Constitution as recognized in *Bivens v. Six*

Absolute witness immunity is traditionally justified as a response to two concerns: 1) intimidation, and 2) self-censorship. Without the protection of immunity, witnesses with important information may be dissuaded from coming forward to testify because of the potential for civil liability arising out of their participation in a judicial proceeding.[14] Even after taking the stand, witnesses may be inhibited by the risk of liability from speaking freely for fear of making honest errors that might subject them to suit.[15] Absolute immunity has therefore been justified in order that "those involved in judicial proceedings be 'given every encouragement to make a full disclosure of all pertinent information within their knowledge.' "[16]

The plaintiffs in *Briscoe,* and the dissenting opinions,[17] offered several reasons why these concerns apply with less force to government witnesses such as police officers than to lay witnesses. First, police officers have a professional interest in obtaining prosecutions that is likely to counterbalance their hesitation to testify. Second, the financial burden of defending a civil suit is less of a concern for police officers, whose defense in suits alleging constitutional violations in the performance of their jobs is ordinarily undertaken by the government. In such suits generally, police officers are entitled to qualified, not absolute, immunity. Third, "perjured testimony by police officers is likely to be more damaging to constitutional rights than such testimony by ordinary citizens, because the policeman in uniform carries special credibility in the eyes of the jurors."[18] For this reason, cross-examination may be less effective in discrediting the perjured testimony of police officers than that of lay witnesses. Finally, the need for close cooperation between prosecutors and police officers reduces the likelihood of prosecutions for perjury, thereby undermining the sanction on which the law relies to compel immunized witnesses to speak the truth.[19]

*Briscoe* explicitly considered these concerns and found that they did not justify excluding official witnesses from the protection of absolute witness immunity.[20] The Court said that the police officer functions like "any other witness."[21] Moreover, the Court added, without absolute immunity, the potential for litigation against official witnesses "might undermine not only their contribution to the judicial process but also the effective performance of their other public duties."[22] Thus, the Court held that the public interest in "protecting the judicial process,"[23] which had justified affording judges, prosecutors and lay witnesses the protection of absolute immunity, also justified granting that protection to police officers when they take the witness stand.

*Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1970). The Court did, however, separately consider and reject petitioner's argument that an exception to the general rule of witness immunity be carved out in cases of alleged perjury by police officer witnesses. —— U.S. at ————————, 103 S.Ct. at 1119–1120. That portion of the opinion is applicable in this case.

14. *Briscoe,* —— U.S. at ——, 103 S.Ct. at 1115.

15. *Id.; see* Veeder, *Absolute Immunity in Defamation: Judicial Proceedings,* 9 Colum.L.Rev. 463, 470 (1909).

16. *Imbler v. Pachtman,* 424 U.S. 409, 439, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (quoting 1 F. Harper & F. James, The Law of Torts, § 5.22 at 424 (1956)).

17. —— U.S. at ——, ——, 103 S.Ct. at 1120, 1130 (Marshall, J., dissenting); *id.* —— U.S. at ——, 103 S.Ct. 1120 (Brennan, J., dissenting); *id.* —— U.S. at ——, 103 S.Ct. at 1132 (Blackmun, J., dissenting).

18. *Briscoe,* —— U.S. at ——, 103 S.Ct. at 1131 (opinion of the Court).

19. *See* Newman, *Suing the Law Breakers,* 87 Yale L.J. 447, 449–50 (1978).

20. —— U.S. at ——, 103 S.Ct. at 1118.

21. *Id.*

22. *Id.*

23. *Id.* —— U.S. at ——, 103 S.Ct. at 1115 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 439, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976) (White, J., concurring in the judgment)).

## II

In *Briggs I,* this court denied Goodwin witness immunity because his testimonial act differed from that of a witness in the usual sense. The court found that Goodwin's brief statement on the stand "was prompted by, and directly incidental to" his involvement in managing and administering an investigation.[24] "To the extent that [Goodwin's] one word answer is viewed as a testimonial act, it was one occasioned by, and critical to, appellant's discharge of that responsibility."[25]

We find it difficult to distinguish Goodwin's testimonial act from those of police officers in situations falling within the rationale of *Briscoe.* Testimony by a police officer will very often involve challenges to his conduct while performing investigatory tasks. A police officer who has been integrally involved in an investigation that culminates in a criminal prosecution has a clear interest in the outcome of the trial. In such a situation, the police officer has professional and personal interests in his testimony that are closely analogous to Goodwin's interest in the testimony out of which this suit arises. *Briggs I* explicitly found Goodwin to be operating not as a prosecutor but as an investigator.[26] We decided that in that role his immunity should resemble that of a police officer involved in an investigation. *Briscoe* informs us that that immunity is absolute for statements made on a witness stand. *Briscoe* therefore compels the conclusion that when Goodwin made his sworn statement from the witness stand,[27] he enjoyed absolute immunity.

The fact that *Briscoe* involved statements at a trial whereas this case involves statements at a hearing on a motion during the grand jury phase of an investigation is not a distinction that allows a different result. *Briscoe* emphasized the concern that the absence of immunity would interfere with the ability of "judicial proceedings"[28] "to determine where the truth lies."[29] That concern applies not only to trials, but to any judicial proceeding where the testimony of witnesses might be affect-

---

**24.** 569 F.2d at 26.

**25.** *Id.* at 27.

**26.** *Id.* at 16–25 ("[W]e rely on a series of federal decisions distinguishing between a prosecutor's role as advocate, on the one hand, and his function as an administrative or investigative officer, on the other." *Id.* at 16.).

**27.** In *Briggs I,* the court did not consider of great significance the fact that Goodwin made his statement under oath from the witness stand:

> Had [Goodwin] volunteered to represent as an officer of the court that no informers were involved, and had the parties been content with that, there would be no issue as to witness immunity worthy of the name. The difference between the falsity of such a nontestimonial representation, on the one hand, and the technical consequence of perjury attached to a statement under oath, on the other, is not at the heart of the immunity issue in this appeal.

569 F.2d at 26. Fuller briefing on this issue indicates that the fact of Goodwin's oath was indeed significant to the credibility given his statement by those who relied on it. The full transcript makes clear that Goodwin offered to make an unsworn representation in response to the court's inquiry, but witnesses' counsel insisted that such a representation was "not competent proof in any court of law and that under these circumstances Mr. Goodwin ought to submit an affidavit *under oath* . . . ." (July 13, Tr. pp. 64–65, Joint Appendix (J.A.) 629–30). It was in response to this objection that the court ordered Goodwin to take the stand, be sworn and testify. Moreover, testimony at appellant's criminal trial, and depositions and interrogatories suggest the importance of the fact that Goodwin's statement was under oath. *See, e.g.,* Answer of Jack Jennings to Goodwin's Interrogatory No. 11, J.A. 530; Answer of Scott Camil to Goodwin's Interrogatory No. 11, J.A. 519; Answer of John Briggs to Goodwin's Interrogatory No. 11, J.A. 517; Deposition of Peter P. Mahoney, September 4, 1979, p. 128, J.A. 497; Answer of William Patterson to Goodwin's Interrogatory No. 10, J.A. 511b.

**28.** —— U.S. at ——, 103 S.Ct. at 1115 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 439, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976) (White, J., concurring in the judgment)).

**29.** —— U.S. at ——, 103 S.Ct. at 1115 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 440, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976) (White, J., concurring in the judgment)).

ed by the lack of immunity.[30] Thus, the rationale of *Briscoe* applies with equal force whenever a witness testifies in a judicial proceeding the function of which is to ascertain factual information.

In addition to causing reconsideration of Goodwin's witness status, *Briscoe* rejected the reasons offered in *Briggs I* for why absolute witness immunity might not apply to government officers in suits alleging constitutional violations.[31] *Briggs I* explicitly noted that "[p]olicy considerations counselling the insulation of *private citizens* from civil liability arising from their performance as witnesses do not apply with equal force when a complaint charges that constitutional rights have been violated by a *public employee* operating from the witness stand .... The unique importance of constitutional rights hardly needs restatement .... [I]t can be asserted with both reason and authority that absolute immunity is not to be extended to the constitutional tort context absent the most compelling justification."[32] The Supreme Court apparently found that neither the public employee status of the witness, nor the constitutional character of the alleged violation constituted such a compelling justification.[33]

III

In granting absolute immunity to public officials acting as witnesses, the Supreme Court recognized that "the alternative of limiting the official's immunity would disserve the broader public interest."[34] "In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."[35] As a lower court, we are bound by the balance struck.[36] We therefore vacate our prior opinion and affirm the judgment of the district court granting summary judgment for Goodwin.

*So ordered.*

MacKINNON, Senior Circuit Judge (concurring in the judgment):

I am not in disagreement with much of the analysis and statements in Judge Bazelon's present opinion, but I believe some of the facts are more favorable to Goodwin than the opinion recognizes, and I prefer to make several comments and rest my concurrence in the result on the following grounds. First, I continue to adhere to the views expressed in my dissent from the panel's original decision in *Briggs v. Good-*

---

**30.** *See supra* pp. 1446–1447.

**31.** The Court cited *Briggs I* as evidence of a split in the circuits on the immunity question, which supplied a reason for granting certiorari. —— U.S. at ——, n. 4, 103 S.Ct. 1112 n. 4.

**32.** 569 F.2d at 28.

**33.** *Briscoe* involved a suit under 42 U.S.C. § 1983, whereas the instant case arises directly under the Constitution. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The Supreme Court has noted, however, that "it would be untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials." *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 n. 30, 73 L.Ed.2d 396 (1982).

**34.** *Briscoe,* —— U.S. at ——, 103 S.Ct. at 1120.

**35.** *Id.* —— U.S. at ——, 103 S.Ct. at 1120 (quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950)).

**36.** While upholding appellee's absolute immunity claim, we note our deep concern. The allegations in this case painfully illustrate the significant costs of this holding—not only to the appellant, but to the integrity of our criminal justice system as well. As the state's lawyer and an officer of the court, a prosecutor has a special obligation to discharge his duties lawfully and fairly. In this case, appellant claims that a prosecutor perjured himself from the witness stand during a criminal investigation. Our response to appellant's claim is that a civil damages action, whatever its merits, may not be pursued against the prosecutor. Instead, appellant must rely on the possibility of a prosecution of the prosecutor by his fellow prosecutors. We find it troubling that our system of justice, which rests so fundamentally on the consent of the governed, offers such inadequate remedies for official violations of individuals' constitutional rights.

# 1450

*win II,* 698 F.2d 486, 497–98 (D.C.Cir.1983). Second, it is my view that Goodwin has a valid factual defense in that he had given orders that government informants be excluded from the class of potential defendants represented by defense counsel and was justified in assuming that his orders had been carried out. Third, in addition to my opinion that Goodwin enjoys immunity as a witness, I am also of the opinion that he possesses complete immunity as a prosecutor, since I generally agree with the opinions expressed in Judge Wilkey's dissent in *Briggs v. Goodwin I,* 569 F.2d 10, 29–61 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).

I must also voice my disagreement with the view expressed in footnote 36 of the majority opinion. That view fails to acknowledge a basic principle of law that has been recognized as fundamental to American jurisprudence for over a hundred years: that those who participate in public litigation and who perform certain governmental functions are not to be subjected thereby to harassing civil litigation. This principle has been consistently applied to judges, prosecutors, legislators and presidents, as well as to witnesses. The law of immunity and its compelling justifications have been expounded by some of the greatest jurists in our nation's history. *See, e.g., Bradley v. Fisher,* 13 Wall. (80 U.S.) 337, 351, 20 L.Ed. 646 (1872) (Field, J.) ("[J]udges ... are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."); *Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967) (Warren, C.J.) ("This immunity 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that judges should be at liberty to exercise their functions with independence and without fear of consequences.'") (quoting *Scott v. Stansfield,* L.R. 3 Ex. 220, 223 (1868)); *Barr v. Matteo,* 360 U.S. 564, 572–73, 79 S.Ct. 1335, 1340, 3 L.Ed.2d 1434 (1959) (Harlan, J.) ("The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government."); *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950) (L. Hand, J.) ("The justification for ... [denying recovery] is that it is impossible to know whether the claim is well founded until the case has been tried, and to submit all officials, the innocent as well as the guilty, to the burden of trial and the danger of its outcome would dampen the ardor of all but the most resolute ....") (quoted in *Nixon v. Fitzgerald,* 457 U.S. 731, 752, 102 S.Ct. 2690, 2703 n. 32, 73 L.Ed.2d 349 (1982)). My final objection to the personal comments in footnote 36 is that they are extrajudicial and serve no worthwhile purpose, as the Supreme Court has spoken.