Willie D. WHITE, Plaintiff,

v.

Richard FRANK, Individually and as an Officer and Employee of the City of Poughkeepsie, New York, Freeman Marshall, Individually and as an Officer and Employee of the City of Poughkeepsie, New York, and the City of Poughkeepsie, Defendants.

No. 86 Civ. 7403 (DNE).

United States District Court, S.D. New York.

Feb. 29, 1988.

Reilly & Lewis, White Plains, N.Y. (Gerald D. Reilly, of counsel), for plaintiff Willie D. White.

Sheft, Wright and Sweeney, New York City (Peter I. Sheft, Norman J. Golub, Robert P. Siegel, of counsel), for defendant Freeman Marshall.

Thurm & Heller, New York City (Edward L. Owen, Milton Thurm, of counsel), for defendant Richard Frank.

Wilson, Bave, Conboy & Bave, P.C. (William H. Bave, of counsel), for defendant City of Poughkeepsie.

## OPINION AND ORDER

EDELSTEIN, District Judge:

This is a civil action, brought pursuant to 42 U.S.C. §§ 1983, 1985(3), and common law. Plaintiff seeks compensatory and punitive damages for false arrest, false imprisonment, and malicious prosecution. The court referred this action to Magistrate Leonard Bernikow on August 29, 1986, pursuant to 28 U.S.C. § 636(b)(1)(B) (1982). Defendants Richard Frank and Freeman Marshall ("the individual defendants") moved, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted. By report and recommendation dated March 31, 1987, the Magistrate recommended that the individual defendants' motions to dismiss be denied in part and granted in part. Plaintiff and defendant Marshall filed objections to the Magistrate's recommendations. This court, after a *de novo* review and consideration of the objections to the Magistrate's report, orders that the individual defendants' motions to dismiss be granted with respect to plaintiff's claims arising from defendants' allegedly false testimony at trial and at the pretrial suppression hearing and denied in all other respects.

### BACKGROUND

The complaint, the material allegations of which are to be taken as admitted for purposes of the motions to dismiss, *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), alleges that the individual defendants, police officers attached to the Crime Prevention Unit of the City of Poughkeepsie, New York ("Crime Prevention Unit"), gave perjurious testimony before a Dutchess County Grand Jury to the effect that plaintiff sold cocaine to a confidential informant on both June 8 and June 15, 1983. The individual defendants repeated this testimony

at a pretrial probable cause hearing and at plaintiff's trial, which began on April 2, 1984. After a jury trial, plaintiff was convicted on two counts of criminal sale of a controlled substance in the third degree, a class B felony, for the June 8, 1983 sale. The conviction was based, at least in part, upon defendant Frank's testimony before the Grand Jury, at a pretrial probable cause hearing, and at trial that he had witnessed the June 8, 1983 sale. The jury could not, however, reach a verdict on the sale of cocaine that allegedly occurred on June 15, 1983, about which defendant Marshall testified before the Grand Jury, at the pretrial probable cause hearing, and at trial. The charges stemming from the alleged June 15, 1983 sale were dismissed. On May 15, 1983, plaintiff was sentenced to seven and one-half to fifteen years imprisonment.

Later, the Dutchess County District Attorney's Office learned of certain misconduct on the part of defendant Frank and other members of the Crime Prevention Unit. On January 4, 1985, defendant Frank was charged with grand larceny in the third degree, criminal possession of stolen property in the second degree, and tampering with physical evidence, all arising from his activities as a police officer of the City of Poughkeepsie. Defendant Frank pleaded guilty to tampering with physical evidence, a Class E felony. Defendant Marshall and other members of the Crime Prevention Unit were also charged with felonies arising out of their activities as police officers. Defendant Marshall pleaded guilty to the crime of official misconduct. According to the complaint, in early 1985, defendant Frank acknowledged to a Dutchess County Assistant District Attorney that he had perjured himself before the grand jury that had indicted the plaintiff, at plaintiff's pretrial probable cause hearing, and at plaintiff's trial. Consequently, an order pursuant to New York Criminal Procedure Law Article 440, vacating plain-

tiff's conviction, was entered on August 15, 1985, whereupon he was released from custody.

The complaint also alleges that plaintiff is black, that the individual defendants are white, and that the prosecution against the plaintiff was racially motivated. The plaintiff further alleges that defendants Frank and Marshall maliciously conspired in initiating the prosecution of plaintiff. In furtherance of this alleged conspiracy, it is claimed that the defendants "repeatedly perjured themselves [and] suborned perjury." Complaint at ¶¶ 51, 52.

As a result of the foregoing allegations, plaintiff claims that he was falsely arrested, maliciously prosecuted, and falsely imprisoned, in violation of his Fourth, Sixth, and Fourteenth Amendment rights.[1]

Citing the Supreme Court case of *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the individual defendants contend that they are absolutely immune from civil liability under Section 1983 arising out of their testimony at trial, before the Grand Jury, and at the pretrial hearing. In *Briscoe*, the Court held that Section 1983 does not authorize a convicted person to assert a claim for damages against a police officer for giving perjurious testimony at that person's criminal trial. *See id.* at 329, 345–46, 103 S.Ct. at 1112, 1120–21.

Plaintiff does not dispute that *Briscoe* shields the individual defendants from damages based upon their testimony at trial. Instead, plaintiff focuses on the individual defendants' testimony before the grand jury and at a pretrial hearing, which, according to plaintiff's papers, was a suppression hearing. In addition, plaintiff challenges the actions of the individual defendants prior to their testifying before the grand jury. Plaintiff alleges that the individual defendants maliciously conspired to initiate the prosecution against him.[2] Further, plaintiff alleges that the actions of

1. Plaintiff also sued a third defendant, the City of Poughkeepsie, for failure to adequately train and supervise the city's Crime Prevention Unit and the individual defendants. The city, which has not moved to dismiss, opposes the present motions.

2. Specifically, plaintiff alleges in the complaint that:

> 51. Notwithstanding the lack of evidence, defendants Frank and Marshall from June 8, 1983 through April 1984 conspired together and maliciously initiated the prosecution

the individual defendants were racially motivated.[3]

In response, the individual defendants argue that plaintiff's allegations of a conspiracy and of racial animus are too conclusory to state a civil rights claim.

Thus, the court is presented with three significant questions: first, whether police officers that testify at grand jury proceedings are entitled to absolute immunity from civil liability; second, whether that same absolute immunity extends to police officers who testify at pretrial hearings such as probable cause hearings held before trial in conjunction with a motion to suppress evidence; whether the allegations of conspiracy and racial discrimination in plaintiff's complaint are sufficient to state a claim under 42 U.S.C. § 1985(3).

## DISCUSSION

### I. *Absolute Immunity*

The Supreme Court in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96

(1983) held that police officers are absolutely immune from liability under 42 U.S.C. § 1983 for testifying falsely at trial. In that decision, the Court expressly declined to decide whether the same immunity would be extended for false testimony at a pretrial probable cause hearing. *See Briscoe, supra,* 460 U.S. at 329 n. 5, 103 S.Ct. at 1112 n. 5. Courts subsequently applying *Briscoe* have split on whether to grant absolute immunity for false testimony at proceedings other than trial.[4]

The Second Circuit has not directly addressed the issue of immunity at pretrial proceedings. Nevertheless, the Second Circuit has stated in dictum that grand jury witnesses should be afforded the same immunity as the defendants in *Briscoe*. *See San Filippo v. U.S. Trust Co. of N.Y.,* 737 F.2d 246, 254 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985).[5] That statement, however, was dictum in the midst of a discussion of whether an order denying a claim of abso-

---

against plaintiff; maliciously continued the same for which they knew they had no probable cause.

52. Upon further information and belief, in furtherance of the illicit conspiracy, defendants Frank and Marshall repeatedly perjured themselves, suborned perjury and made material alterations in police reports, with their sole objective being the conviction of plaintiff.

Complaint ¶¶ 51, 52.

**3.** Plaintiff alleges in the complaint that:

59. ... defendants Frank and Marshall, are white; that lacking any probable cause to instigate and perpetuate the prosecution against plaintiff, it is apparent that the same was racially motivated.

Complaint ¶ 59.

**4.** The issue arises primarily in connection with testimony given at pretrial probable cause hearings, before a grand jury, or at probable cause determinations for warrants.

The majority of courts have extended absolute immunity to police officers testifying at adversarial pretrial probable cause hearings or before a grand jury. *See Holt v. Castaneda,* 832 F.2d 123, 127 (9th Cir.1987) (adversarial pretrial hearing); *Kincaid v. Eberle,* 712 F.2d 1023, 1024 (7th Cir.) (grand jury) (per curiam), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725 (1983); *Briggs v. Goodwin,* 712 F.2d 1444, 1449 (D.C.Cir.) (grand jury motion hearing), *cert. denied,* 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1983); *Strength v. Hubert,* 660 F.Supp. 878,

885–87 (M.D.Ala.) (grand jury), *modified in part,* 670 F.Supp. 322 (M.D.Ala.1987).

Some courts have held that absolute immunity does not attach at grand jury or pretrial probable cause hearings. *See Anthony v. Baker,* 767 F.2d 657, 663 (10th Cir.1985) (grand jury); *Wheeler v. Cosden Oil & Chem. Co.,* 734 F.2d 254 (5th Cir.1984) (grand jury or probable cause hearing);

Finally, false statements made in a warrant affidavit by police officers are not entitled to absolute immunity. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986); *Krohn v. United States,* 742 F.2d 24, 31 (1st Cir.1984).

**5.** The Second Circuit's statement regarding grand jury witness immunity is as follows:

Furthermore, it is settled under *Briscoe v. LaHue* that a witness has absolute immunity from § 1983 liability based on the substance of his trial testimony. Although the Court in *Briscoe* left the question open, it must follow that grand jury witnesses should be similarly protected. *See Kincaid v. Eberle,* 712 F.2d 1023 (7th Cir.1983); *cf. Dale v. Bartels,* 552 F.Supp. 1253, 1267–73 (S.D.N.Y.1982) (finding such immunity pre-*Briscoe* ). Thus, had plaintiff sued defendants on the basis of the allegedly false grand jury testimony, and had Judge Gagliardi denied defendants' motion for summary judgment on the grounds of absolute immunity, that denial would be ripe for interlocutory review, and we believe reversal, under *Nixon* [*v. Fitzgerald,* 457 U.S.

lute immunity may be appealed. *See id.* The facts of *San Filippo* did not present the question of immunity for non-trial testimony. Moreover, there has been subsequent case law, most notably *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), that is relevant to the issue of absolute immunity at pretrial proceedings. In light of the subsequent case law and the context of the statements in *San Filippo,* this court views the position of the Second Circuit on the issue of absolute immunity for false testimony at pretrial hearings as unresolved. Accordingly, this court is impelled to address the issue in light of the *Briscoe* opinion and subsequent case law.

### A. Briscoe *and Its Policies*

The *Briscoe* opinion is grounded on the common law rule of absolute immunity from liability arising out of a witness' testimony at trial. *See Briscoe, supra,* 460 U.S. at 330–31, 103 S.Ct. at 1112–13. The Supreme Court looked to the common law for guidance because it found that Congress, in adopting the Civil Rights Act, codified today at 42 U.S.C. § 1983, was aware of, and did not intend to, abrogate common law principles of tort law, including immunities.

The common law witness immunity rule was based on the sound notion that "the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." *See Briscoe* 460 U.S. at 333, 103 S.Ct. at 1114 (quoting *Calkins v. Sumner,* 13 Wis. 193, 197 (1860)). The trial setting, including an impartial judge, a jury, the adversarial relationship of the parties, the rules of evidence as applied by the judge, the right to cross-examine witnesses, and the right to present contrary evidence, provides an adversarial mechanism that is uniquely designed to winnow out the truth from a body of evidence.

Our adversarial trial system, thus, functions best when there is no incentive for witnesses to withhold or shade testimony. As the Supreme Court expressed the notion: "[T]he truthfinding process is better served if the witness' testimony is submitted to 'the crucible of the judicial process so that the factfinder may consider it, after cross-examination, together with the other evidence in the case to determine where the truth lies.'" *Briscoe, supra,* 460 U.S. at 333–34, 103 S.Ct. at 1114–15 (quoting *Imbler v. Pachtman,* 424 U.S. 409, 440, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976) (White, J., concurring in the judgment). It is, therefore, the capacity for the trial process to ascertain the truth that requires witnesses not to be inhibited.

Without absolute immunity, trial witnesses might be inhibited in two ways. First, witnesses might be reluctant to testify at all, for fear of subsequent litigation. Second, even if the witness were to testify, that testimony might be less forthright and more slanted in favor of the opposing party than it otherwise would be, for fear of a retributory lawsuit. *See Briscoe,* 460 U.S. at 333, 103 S.Ct. at 1114. Such self-censorship would, therefore, distort and inhibit the trial's truthfinding process.

In addition to following the common law, the *Briscoe* rule reflects a judicial balancing of the costs imposed by absolute immunity against the costs of retributory lawsuits against witnesses. In the words of Judge Learned Hand, discussing the immunity of prosecutors for damages in actions for malicious prosecution:

As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) ] and *Briscoe.*
*San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 254 (2d Cir.1984).
  The court in making that observation was discussing the appealability of an order denying summary judgment on the basis of absolute immunity, under the "collateral final order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). The issue of grand jury immunity was not raised by the parties, considered by the trial court, nor presented to the Court of Appeals.

*Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

Consequently, the Court in *Briscoe* balanced the risk that false testimony at trial will unjustly convict a defendant against the risk that honest witnesses will be inhibited in their testimony by the threat of retributory lawsuits. The safeguards of the trial process are critical to this delicate balance. Implicit in this judicial equation is the confidence that the truthfinding process of the trial will usually expose the dishonest witness. It is perceived that the occasions on which a party is actually harmed by the wilful, false testimony of a witness will be few and far between. Conversely, this risk, perceived as minimal, is offset by the enormous disruption of the judicial process caused by the almost inevitable retaliatory suits that would follow every adverse determination at trial, without the deterrent of absolute witness immunity.

### B. *Absolute Immunity at Different Proceedings*

The majority of courts addressing the question of witness immunity have recognized, at least implicitly, that the type of setting in which the testimony is given is important in determining the level of immunity to which a witness should be entitled.

### 1. *Pretrial Warrant Applications*

Although the Supreme Court has not addressed the question of immunity from liability for false testimony before a grand jury, it has addressed the issue of immunity for false statements made to obtain a warrant. *See Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). In *Malley,* plaintiffs sued under 42 U.S.C. § 1983, alleging, *inter alia,* that the defendant, a state police officer, made false statements in the affidavit supporting the application for plaintiffs' arrest warrants. The Court held that the defendant was entitled to the qualified immunity estab-

lished in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984),[6] but not to the absolute immunity enunciated in *Briscoe.*

The Court primarily based its holding on the lack of absolute immunity at common law for one whose complaint causes a warrant to issue. In addition to the common law tradition, the Court found that the judicial process would "on the whole benefit from a rule of qualified rather than absolute immunity." *Malley, supra,* 106 S.Ct. at 1097. The court reasoned that the reflection by a police officer that a rule of qualified immunity would prompt "is desirable because it reduces the likelihood that the officer's request for a warrant will be premature. Premature requests are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent or, by giving the basis for a suppression motion, benefit the guilty." *Id.*

Thus, the Supreme Court has expressly held that a police officers making false statements at an *ex parte* probable cause proceeding is only entitled to qualified immunity. Appellate courts have also addressed the issue of immunity for false testimony at other types of pretrial proceedings.

### 2. *Adversarial Pretrial Hearings*

■ Plaintiff alleges that the individual defendants testified falsely at a pretrial probable cause hearing to suppress evidence. On the spectrum of proceedings to which *Briscoe* has been applied, an adversarial pretrial hearing, such as a suppression hearing falls somewhere between the trial setting in *Briscoe* and the warrant application process at issue in *Malley.* The question has been answered at the appellate level with relative uniformity.

Recently, the Ninth Circuit answered in the affirmative the question "whether a police officer who gives perjurious testimo-

---

**6.** *Leon* announced a standard of objective reasonableness in determining whether a police officer is justified in relying on a facially valid warrant that, nevertheless, lacks probable cause. Essentially, the *Leon* standard provides immuni-

ty to a police officer unless "the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley, supra,* 106 S.Ct. at 1098 (citing *Leon* ).

ny during adversarial pretrial proceedings in a criminal matter is entitled to absolute immunity from liability for damages flowing from his testimony." *Holt v. Castaneda*, 832 F.2d 123, 124 (9th Cir.1987). The Ninth Circuit compared the adversarial pretrial proceeding before it with the trial setting at issue in *Briscoe* and found that at each proceeding "the witness testifies in court, under oath, under the supervision of the presiding judge and is subject to criminal prosecution for perjury. Moreover, in adversarial pretrial matters, the witness is available for cross-examination." *Id.*

The Ninth Circuit's reasoning is persuasive. For the purpose of granting immunity, there is no difference between an adversarial pretrial proceeding and a trial. Both parties are represented by counsel, there is an opportunity to present contrary evidence, the proceeding is presided over by an impartial judge whose rulings are recorded, and witnesses are subject to cross examination. Thus, the elements that make the trial a "crucible" designed to ascertain truth are all present in an adversarial pretrial probable cause hearing.

The District of Columbia Circuit has also held, albeit reluctantly,[7] that one giving false testimony before a grand jury-related hearing is absolutely immune from Section 1983 liability. *Briggs v. Goodwin*, 712 F.2d 1444, 1449 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984). In *Briggs*, various grand jury witnesses that were represented by the same counsel filed a motion to compel the government to disclose whether any of the witnesses were government informants.[8] *See id.* at 1445. At the hearing that ensued, the government prosecutor took the stand and testified that none of the witnesses were in fact government informants. Applying the rationale of *Briscoe*, the court granted the prosecutor-witness absolute immunity.[9]

The court found no distinction between "a hearing on a motion during the grand jury phase of an investigation" and the trial setting. The hearing in issue was adversarial in nature: both sides were allowed to present evidence, witnesses could be cross-examined, a judge was present, and evidentiary rules applied. Ultimately, the court found that the truthfinding process was better served by granting absolute immunity.

*Holt* and *Briggs*, therefore, deal with the question of absolute immunity for false testimony at *adversarial* hearings. This court is persuaded that these cases set forth the correct application of *Briscoe* to an adversarial pretrial proceeding such as a suppression hearing. Accordingly, the individual defendants motion to dismiss must be granted to the extent of plaintiff's claims for damages arising from false testimony at his suppression hearing.

### 3. Grand Jury Proceeding

The court now must decide the immunity to be afforded to a police officer testifying before a grand jury. Judicial treatment of the immunity issue at the grand jury stage has unfortunately not been as uniform as for adversarial pretrial proceedings.

The Court of Appeals for the Seventh Circuit has held, that *Briscoe* requires absolute immunity to be granted to witnesses testifying before a grand jury. *Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.) (per curiam), *cert. denied*, 464 U.S. 1018, 104 S.Ct.

---

**7.** The court decided *Briggs v. Goodwin*, 712 F.2d 1444 (D.C.Cir.1983) on rehearing, after the Supreme Court decided *Briscoe*, and it reversed its prior ruling in light of that decision. The court, although granting absolute immunity, expressed "deep concern" and "[found] it troubling that our system of justice, which rests so fundamentally on the consent of the governed, offers such inadequate remedies for official violations of individuals' constitutional rights." *Briggs*, 712 F.2d at 1449 n. 36.

**8.** This motion was filed in response to rumors that some of the witnesses before the grand jury were indeed informants.

**9.** The Court of Appeals originally had denied the defendant in *Briggs* the protection of absolute immunity. The Supreme Court subsequently decided the *Briscoe* opinion and the court granted a rehearing to consider what effect if any *Briscoe* would have on its decision. Upon reconsideration the court granted the defendant absolute immunity.

551, 78 L.Ed.2d 725 (1983).[10] The court based its decision both on history and policy. First it determined that the common law favored absolute immunity for grand jury testimony. Second, the court reasoned that potential liability would inhibit grand jury testimony in the same way that it would at trial.[11]

More recently, in the Middle District of Tennessee, it was held that grand jury witnesses are absolutely immune from damages liability. *Strength v. Hubert,* 660 F.Supp. 878 (M.D.Ala.1987). The court, noting that *Briscoe* was predicated on keeping witnesses at a trial free from inhibition, "fail[ed] to understand why the same would not be applicable to § 1983 claims based upon alleged false or perjurious grand jury testimony." *Id.* at 885.

The court in *Strength* relied on both *Briggs* and *Kincaid* in reaching its conclusion. The court focused on the impact that the lack of absolute immunity would have on a witness. Thus, the court readily concluded that the failure to grant absolute immunity to a grand jury witness would frustrate the purpose of the grand jury, which it defined as investigating and determining probable cause. Were the rule otherwise, the court reasoned, witnesses could not testify without fear of reprisal.

The *Strength* court subsequently reconsidered its decision in light of the Supreme Court's decision in *Malley*. *See Strength v. Hubert,* 670 F.Supp. 322 (M.D.Ala.1987). In summary, the court found nothing in *Malley* to change its prior decision. It noted that at common law grand jury witnesses were entitled to absolute immunity.

The court further reasoned that witnesses would be inhibited without absolute immunity, viewing the Supreme Court's finding in *Malley* that qualified immunity provided sufficient protection to a police officer seeking a warrant as "readily distinguishable."

Two other courts, however, have held that testimony before a grand jury is not absolutely privileged. In *Anthony v. Baker,* 767 F.2d 657 (10th Cir.1985), the court held that "*Briscoe v. LaHue* does not afford immunity for the testimony of the defendants before the Grand Jury." *Id.* at 663. The court noted that *Briscoe* left open the question of immunity before a grand jury and therefore did not require that absolute immunity be granted.

The Fifth Circuit Court of Appeals held that "*Briscoe* does not afford immunity from suit for knowingly false testimony submitted at probable cause determinations." *Wheeler v. Cosden Oil and Chemical Co.,* 734 F.2d 254, 261, *modified in part,* 744 F.2d 1131 (5th Cir.1984) The court found that the *Briscoe* Court expressly declined to decide the issue of immunity at probable cause hearings because there was no such immunity at common law and, further, the policy considerations applicable to probable cause determinations are different from those pertaining to trial testimony. *See id.* at 261 (quoting *Briscoe, supra,* 460 U.S. at 351–52 n. 10, 103 S.Ct. at 1123–24 n. 10 (Marshall, J., dissenting)). The Fifth Circuit also discounted the persuasiveness of *Kincaid* and *Briggs,* noting that the opinions were "cursory in the extreme, and in our view they inadvisedly

---

**10.** The persuasiveness of the *Kincaid* decision is uncertain and was apparently so even to one of the judges on the panel deciding it. *See Kincaid, supra,* 712 F.2d 1023 (Cudahy, J., concurring). By the court's own account, the issue was one of first impression in the circuit. The decision was by a per curiam opinion and was decided on the basis of a nine page pro se brief, written long before the *Briscoe* decision, and without the benefit of oral argument.

In addition to the lack of input from counsel, the opinion lacks any in-depth consideration of the various factors at work in the *Briscoe* decision. *See Wheeler v. Cosden Oil and Chem. Co.,* 734 F.2d 254, 261 n. 16 (describing *Kincaid* as cursory and conclusory).

**11.** The court in fact concluded that false testimony before a grand jury is less harmful than at trial because the grand jury cannot convict. Consequently, the cost of granting absolute immunity for grand jury testimony is less than for trial testimony. The argument misses the point. Although the harm caused in the grand jury context is debatable, a grand jury incorporates few of the numerous safeguards of a trial to ensure that the truth is discovered. Therefore, the likelihood that false testimony will go undetected is greater in the grand jury context than in a trial.

extend *Briscoe* beyond the intrinsic limitations of its basis in the common law." *Id.* at 261 n. 16.

### C. *Application of* Briscoe *and Its Progeny*

■ A review of *Briscoe* and the case law that it has spawned reveals several principles that govern the analysis of the absolute immunity issue. First, Section 1983 must not be read to create any new immunities not clearly recognized at common law. Second, the *raison d'etre* for the absolute immunity rule in *Briscoe* is the quest for truth. Third, to properly examine the issue of witness immunity, it is necessary to consider the nature of the proceeding in which the witness has testified rather than its temporal proximity to trial.

The common law treatment of witness immunity is not as clear for grand jury witnesses as it is for trial witnesses. There is authority for the proposition that a witness before a grand jury is absolutely immune for his testimony. *See Schultz v. Strauss,* 127 Wis. 325, 106 N.W. 1066 (1906). In *Schultz,* the Wisconsin Supreme Court began with the proposition that a witness is entitled to absolute immunity for statements uttered in a *judicial proceeding.* From there it maintained that the grand jury is a judicial proceeding and thus any statements that are "material and pertinent" to the proceeding are absolutely privileged. Finally, there is a presumption of materiality and relevance if testimony is given before the grand jury and the harm alleged arises from the grand jury proceeding—i.e., an indictment is handed up.

There is also authority indicating that an action for malicious prosecution can be maintained where a witness' testimony causes an indictment to issue without probable cause. *See Dinsman v. Wilkes,* 53 U.S. (12 How.) 389, 401, 13 L.Ed. 1036 (1851); *Miller v. Chicago, M. & St. P. Ry. Co.,* 41 F. 898, 904 (C.C.W.D.Mo.1890). Although these courts make clear that malice is irrelevant, it is equally clear that such courts are referring to malice of motives. These cases make clear that the standard against which the actions of a complaining witness should be judged is that of objective reasonableness. *See Miller, supra,* 41 F. at 905 (if plaintiff could show that ordinary care and diligence would have revealed his innocence then he could make out a case).

Thus, since it is not clear that there was a universally accepted rule of absolute immunity for grand jury witnesses' at common law, this court is not free to create one under 42 U.S.C. § 1983. *See Briscoe, supra,* 460 U.S. at 340–341, 103 S.Ct. at 1118–19. Consequently, this court must examine the objectives that the Supreme Court intended to advance in *Briscoe* and its progeny, and attempt to advance those objectives in the instant case.

The Supreme Court has laid down the parameters for witness immunity. At one extreme, trial testimony is absolutely privileged; at the other extreme, false statements made in a warrant application are entitled only to qualified immunity. In *Briscoe,* the Court noted that "the focus of our analysis has been the nature of the judicial process itself." *See Briscoe, supra,* 460 U.S. 334–36, 103 S.Ct. at 1115–16. The trial is a full-blown procedure that provides a full panoply of safeguards to find out the truth. Such a process should be permitted to sift through all the facts in order to arrive at the truth. *See Imbler v. Pachtman,* 424 U.S. 409, 439, 96 S.Ct. 984, 999, 47 L.Ed.2d 128 (1976) (White, J., concurring). Conversely, the warrant application procedure is designed to determine whether there is probable cause to issue a warrant. The warrant application procedure has few procedural safeguards because its primary goal is to provide an impartial officer to assess whether a given set of facts constitutes probable cause. The procedure works only to the extent that the facts presented to the judge or magistrate are true. Consequently, a rule of qualified immunity provides a welcome incentive for affiants seeking a warrant to tell the truth. *See Malley, supra,* 106 S.Ct. at 1097.

In connection with the importance of the nature of the judicial process, the Court also called attention to the accouterments

of a trial and their importance to the court's reasoning. *Briscoe, supra,* 460 U.S. at 342, 103 S.Ct. at 1119; *see also Krohn v. United States, supra,* 742 F.2d at 41. In fact, it is these accouterments that make the trial process effective in winnowing out the truth from all the evidence presented at trial.

Increasing the risk that false testimony will pass undetected by the proceeding at which it was offered significantly alters the equation. A grand jury is essentially an *ex parte* proceeding. The government prosecutor alone presents evidence; there is no impartial judge presiding; the rules of evidence are applied by the prosecutor; the proceedings are not held in open court; and, most significantly, there is no opportunity to cross-examine any of the witnesses.[12] The only regulators of truth before the grand jury are the testimonial oath and the possibility of a future criminal prosecution for perjury. A grand jury proceeding is almost totally devoid of any procedural check against false testimony.

*Ex parte* pretrial proceedings, thus, do not provide the same safeguards that an adversarial proceeding provides. Therefore, even though the failure to grant absolute immunity may give pause to a witness, this reflection by the witness should promote rather than inhibit the truthfinding purpose of the judicial process. *Cf. Malley, supra,* 106 S.Ct. at 1097 (the reflection that a rule of qualified immunity causes is desirable because it reduces the likelihood that the request for an arrest warrant will be premature). The primary purpose of the *Briscoe* rule is to promote the truthfinding process. A rule of absolute immunity for trial testimony advances the truthfinding process by allowing the trial safeguards to winnow out the truth from the evidence. The same rule in a nonadversarial setting is an invitation to perjury.

The plaintiff alleges that the individual defendants gave false testimony before the grand jury that indicted him. This court finds that a grand jury proceeding is more akin to the warrant application proceeding

in *Malley* than to the trial process at issue in *Briscoe.* The grand jury is an *ex parte* proceeding, it does not provide an opportunity to present contrary evidence, to cross-examine witnesses, and the rules of evidence to do not apply. *See* Fed.R.Evid. 1101(d)(2); *see also Costello v. United States,* 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397 (1956). In short, it is lacking the procedural safeguards with which a trial or adversarial pretrial hearing is equipped.

In fact, in some ways the warrant application procedure offers more protection than the grand jury proceeding. The warrant application is made to a judicial officer, either a judge or a magistrate. The process is controlled by an impartial officer who is not part of the investigatory branch of the government. Conversely, the grand jury's role is investigatory. [cites]. It is primarily conducted by a prosecutor and there is no judicial officer present throughout the proceedings. *See generally* M. Frankel & G. Naftalis, *The Grand Jury,* 18–32 (1977).

Because of the lack of procedural safeguards at the grand jury stage, as at the warrant application stage, the truthfinding purpose of the judicial process will be aided by a rule of qualified immunity. The qualified immunity rule strikes a proper balance between deterrence of frivolous and retaliatory lawsuits against witnesses and the interests in protecting an accused from wilful and malicious false accusations. The determination of immunity involves the weighing of competing interests at stake. Upon examining these interests, this court finds that the policies set forth by the Supreme Court in *Briscoe* would not be advanced by granting absolute immunity to police officers testifying falsely at *ex parte* pretrial proceedings such as a grand jury. Rather, the court finds that the policies set forth by the Supreme Court in *Briscoe* and *Malley* are better served, in the grand jury context, by a rule of qualified immunity, based on a standard of objective reason-

---

**12.** Moreover, the grand jury's role is not to find the truth, but rather it is to determine whether the government is justified in proceeding to prosecute an individual.

ableness, for liability arising from false testimony.

## II. *42 U.S.C. § 1985(3)—Conspiracy*

Absolute immunity does not extend to extra-judicial conspiracies to give false testimony because the rationale of *Briscoe* is inapplicable outside the scope of judicial proceedings. *San Filippo v. U.S. Trust Co., supra,* 737 F.2d at 255. The individual defendants, however, argue that the plaintiff's allegations of conspiracy are too vague and conclusory to state a valid claim under 42 U.S.C. § 1985(3).[13] In particular, the individual defendants contend that the complaint lacks specific allegations that they agreed to deprive plaintiff of his constitutional rights, and that the complaint also lacks the requisite allegations of racial animus. *See* Defendant Marshall's Objections at 7–13; Supplemental Memo in Support at 8–13.

This case is before the court on defendants' motion to dismiss the complaint for failure to state a claim. The general rule is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). Nevertheless, because a Section 1985(3) claim is easily pleaded and can substantially disrupt governmental functions, a plaintiff must plead facts in a detailed manner to overcome a motion to dismiss. *See Angola v. Civiletti,* 666 F.2d 1, 4 (2d Cir.1981). Such heightened scrutiny is intended to allow law enforcement officials to discharge their duties, free from the threat of vexatious and frivolous lawsuits. Accordingly, although this court may accept as true plaintiff's allegations, it must critically evaluate the complaint to determine whether sufficiently detailed facts have been pleaded to demonstrate that the suit is not frivolous. *Angola, supra,* 666 F.2d at 4.

To make out a claim under 42 U.S.C. § 1985(3)[14] a complaint must allege:

1. A conspiracy between two or more persons;

2. Racial or other class-based discrimination;[15]

---

**13.** Plaintiff's complaint does not specifically invoke § 1985(3). Nevertheless, the complaint alleges a conspiracy to deprive plaintiff of his civil rights, and both parties address the § 1985(3) conspiracy issue in their memoranda of law. *See* Plaintiff's Memorandum of Law in Opposition ("Opposition Memo") at 6–9. Memorandum in Support of Defendant Marshall's Motion to Dismiss ("Marshall Memo") at 12–16; Reply Memorandum of Defendant Frank in Support of Motion to Dismiss ("Frank Reply Memo") at 3–5. Accordingly, this court applies the criteria of § 1985(3) to the plaintiff's complaint.

**14.** 42 U.S.C. § 1985(3) provides:

*Depriving persons of rights or privileges.* If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the law; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice–President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

**15.** Section 1985(3) has been interpreted as requiring a showing of racial animus. In the words of the Supreme Court: "The language requiring intent to deprive of *equal* protection or *equal* privileges and immunities means that there must be some racial, or perhaps other class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1970); *accord United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 834–35, 103 S.Ct. 3352, 3359–60, 77 L.Ed.2d 1049 (1983). The Supreme Court has not definitively answered the question whether any class-based discrimination other than race will satisfy this requirement of § 1985(3).

3. An act by one of the conspirators to further the conspiracy's goal;

4. Injury to another person or a deprivation of another person's right or privilege as a United States citizen.

*See United Brotherhood of Carpenters v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 103–04, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1970). The individual defendants challenge the complaint only with respect to the first two elements of § 1985(3).

■ With regard to racial animus, plaintiff has alleged that he is black, that the defendants are white, and that race was the motivation for the malicious prosecution and perjury alleged in the complaint. The court finds this to be a sufficient allegation for purposes of § 1985(3). The requirement of racial animus is not specified by the statute as an element of the cause of action; it is a judicially-created surrogate for the statutory requirement that the conspiracy must be intended to deprive another of equal protection or privileges and immunities guaranteed by the constitution. *See Scott, supra,* 463 U.S. at 828–29, 103 S.Ct. at 3355–56; *Griffin, supra,* 403 U.S. at 102, 91 S.Ct. at 1798. Although more facts might have been alleged, it must be borne in mind that allegations of racial animus involve defendants' state of mind, which is difficult to prove in any event and particularly so at the pleading stage. In examining the complaint as a whole, this court cannot say that plaintiff's allegations of racial animus are so conclusory as to suggest that plaintiff's claim is frivolous or baseless. *Angola, supra,* 666 F.2d at 4.

■ With respect to the conspiracy element of Section 1985(3), the plaintiff alleges that the individual defendants conspired to prosecute him maliciously by, among other things, testifying falsely against the plaintiff. *See* Complaint at ¶ 51. The plaintiff also alleges a general pattern of illegal conduct by the members of the Crime Prevention Unit between 1982 and 1985. *See id.* at ¶¶ 53–58. Such illegal conduct included "[stealing] monies recovered in drug raids; plant[ing] drugs and

weapons on persons, tamper[ing] with physical evidence; and [repeated] perjury." *Id.* at ¶ 54. The plaintiff bases these allegations, at least in part, on the report issued by the Dutchess County Grand Jury, First Term 1985, which allegedly described the situation in the Crime Prevention Unit as uncontrolled and unsupervised. *See id.* at ¶ 58.

This court disagrees with defendants' argument that the complaint is too vague and conclusory to establish a conspiracy. As set forth above, the complaint alleges numerous overt acts of the alleged conspiracy, particularly the giving of perjurious testimony by both defendants, one of whom has admitted the perjury. Moreover, the complaint places the acts of the individual defendants in the context of the broader misconduct within the Crime Prevention Unit, which included stealing monies recovered during drug arrests, tampering with evidence, and committing and suborning perjury. The defendants' contention that there are no allegations of an actual agreement to testify falsely is unconvincing. First, under the facts as alleged, it is improbable that the individual defendants' could have independently concocted the alleged false testimony without prior consultation. Second, the specific facts surrounding the agreement between the defendants are likely unknown and inaccessible to the plaintiff. Consequently, the absence of facts specifying when and where the defendants met to consummate their alleged bargain is not fatal to plaintiff's claim; at a minimum, the facts alleged raise a sufficient question to reject the argument that the claim is frivolous, particularly in light of the fact that one of the defendants brought to light the perjurious testimony. *Angola, supra,* 666 F.2d at 4.

The defendants cite *San Filippo* for the proposition that conspiracy claims regarding perjured testimony should be readily dismissed to prevent the intimidation of government witnesses, particularly in light of the impediment that testimonial immunity poses to plaintiffs. The Second Circuit in *San Filippo* indeed stated that such

conspiracy claims should be carefully evaluated and that "clearly baseless" suits should be dismissed on pretrial motion. *See San Filippo, supra,* 737 F.2d at 256. In *San Filippo,* however, the complaint alleged no specific facts suggesting that the defendants had agreed to provide perjured testimony, but only alleged that the two witness-defendants had met prior to trial with the prosecutor. Moreover, in *San Filippo,* none of the facts alleged suggest that there was any merit whatever to plaintiff's claims of perjury or conspiracy to commit perjury. In the instant case, one of the defendants has admitted to committing perjury, the other has pleaded guilty to tampering with evidence, and a grand jury has issued a report suggesting that corruption was rampant within the defendants' department. Such allegations cloak plaintiff's complaint with a degree of credibility and substance that readily distinguishes this case from *San Filippo.*

Accordingly, finding that the complaint in the case at bar does not set forth a frivolous and baseless claim, such as the Second Circuit contemplated in *San Filippo,* this court will not dismiss the Section 1985 claim at this time.

## CONCLUSION

The defendants' motion to dismiss the complaint is granted as to claims for damages arising from their testimony at the pretrial suppression hearing and at trial. The motion is denied as to testimony before the grand jury and with respect to plaintiff's conspiracy claims pursuant to 42 U.S.C. § 1985(3).

SO ORDERED.